

**In re J.E.H., Appellant.**

**No. 95–FS–1133.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1996.
Decided Nov. 19, 1996.*

Charles A. Moran, appointed by the court, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, Enforcement Division, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, Office of the Corporation Counsel, were on the brief, for appellee.

Before FERREN and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

J.E.H., a minor, pled guilty to the crime of robbery in exchange for dismissal of a charge of armed robbery and several related charges. Three months later, before the court entered a final disposition, J.E.H. filed a motion to withdraw his guilty plea. The court held a hearing, denied the motion, and committed J.E.H. to the custody of the Department of Human Services for three years. J.E.H. appeals the denial of his motion to withdraw his guilty plea. We affirm.

**I.**

The following facts are not disputed. On December 8, 1994, the police arrested J.E.H. and another youth in connection with an armed robbery. J.E.H. was charged with armed robbery, D.C.Code §§ 22–2901, –3202 (1996 Repl.), carrying a pistol without a license, D.C.Code § 22–3204(a) (1996 Repl.),

---

* The decision in this case was originally issued as a Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

and carrying an unregistered pistol and unregistered ammunition, D.C.Code §§ 6–2311(a), –2361(3) (1995 Repl.). On January 11, 1995, Judge Walton held a plea hearing. J.E.H. agreed to plead guilty to the lesser included offense of robbery, and the government agreed to drop all other charges. After the plea inquiry pursuant to Super.Ct.Juv.R. 11, Judge Walton accepted the plea, released J.E.H. until disposition, and scheduled a disposition hearing for March 1, 1995.

On March 1, Judge Walton continued the disposition hearing until April 25, ordered J.E.H. to undergo both physical and psychological evaluations, and ordered him confined to the Oak Hill Youth Detention Center. On April 13, J.E.H. filed a motion to withdraw his guilty plea, *see* Super.Ct.Juv.R. 32(e), in which J.E.H. maintained that psychological testing showed he could not really have understood the nature of the plea proceeding and the rights he had waived, and thus that he could not have knowingly and intelligently pled guilty. J.E.H. also claimed that his psychological difficulties had left him vulnerable to pressure to plead guilty from R.J., his "stepfather" (his mother's boyfriend and father of J.E.H.'s siblings), and that the guilty plea, therefore, had been coerced, not freely made.

On June 29, 1995, after hearing testimony from J.E.H.'s stepfather and a psychologist who had evaluated J.E.H., Judge Walton denied the Rule 32(e) motion, ruling that J.E.H. had knowingly and intelligently pled guilty and that R.J. had not coerced him into entering the plea. Judge Walton noted that the government's proffer at the Rule 11 proceeding had been strong, and that the government would suffer substantial prejudice if J.E.H. were allowed to withdraw his plea, especially because the complaining witness had moved to Atlanta, Georgia. Judge Walton also observed that J.E.H. had not claimed innocence and that he had waited three months before attempting to withdraw his plea. The judge then concluded that J.E.H.'s fear of returning to Oak Hill, more than any other factor, had motivated his effort to withdraw the plea. The judge accordingly denied the motion, and this appeal followed.

## II.

J.E.H. makes two arguments on appeal. First, he maintains that Judge Walton erred by not ascertaining whether permitting withdrawal of the plea was in the best interest of the child. He cites *In re T.R.J.*, 661 A.2d 1086, 1092 (D.C.1995). Second, J.E.H. argues that even if Judge Walton applied the correct standard, he abused his discretion in denying the motion to withdraw the plea.

## A.

■ In *In re T.R.J.*, at the government's request, the trial court terminated a neglected child's commitment to the Department of Human Services because the child, although not yet 21, had been unable to make effective use of the services provided. We held that such termination was contingent upon a finding "that commitment [was] no longer necessary to safeguard the child's welfare," expressed in terms "of the child's best interest." *Id.* at 1087. We also assumed, however, that the "interests and safety of the public are factors for consideration in determining appropriate dispositional alternatives for a neglected child." *Id.* at 1093; *see id.* at 1087 n. 2, 1093 n. 7.

Although *In re T.R.J.* dealt with neglect proceedings, J.E.H. argues that we should apply the same "best interest" standard in delinquency proceedings. He cites the historic role of the juvenile court system as an extension of the very parens patriae role that animates the court's power in neglect proceedings. He argues in his brief that, like neglect proceedings, delinquency proceedings are "fully child-centered," and that the role of the court in both proceedings is "the same, i.e., the court is to find the 'real needs' of the particular child and bring to bear all the available resources in order to meet those needs."

We reject J.E.H.'s neglect analogy. The statutes relied on in *In re T.R.J.* all refer either to detention or to disposition.[1] A rul-

---

1. *In re T.R.J.* cites the following statutes:

D.C.Code § 16–2310 (1989 Repl.) (criteria for

ing on a plea withdrawal motion under Super.Ct.Juv.R. 32(e) is not a "disposition." The delinquency statute lists specific "dispositions" the trial court may order under that delinquency section of the statute, *see* D.C.Code § 16–2320(c) (1989 Repl. & 1996 Supp.), and allowance of withdrawal of a guilty plea is altogether unlike any of the "dispositions" listed. Indeed, Rule 32(e) itself states that a "motion to withdraw a plea of guilty may be made only *before a dispositional order is entered.*" Super.Ct.Juv.R. 32(e) (emphasis added).

■ Even if we were to apply a "best interest" standard to the court's consideration of a Rule 32(e) plea withdrawal motion, that standard would not be inconsistent with the "fair and just" standard applied to a presentence plea withdrawal in an adult criminal proceeding. *See Binion v. United States,* 658 A.2d 187, 191 (D.C.1995). Motions to withdraw a guilty plea, like entry of the plea itself, receive rigorous scrutiny "to ensure that the vast majority of criminal defendants who plead guilty have truly abandoned their constitutional right to a trial with its attendant safeguards." *Gooding v. United States,* 529 A.2d 301, 305 (D.C.1987). Furthermore, the language of Super.Ct.Juv.R. 32(e) reflects Super.Ct.Crim.R. 32(e).[2] It therefore appears to us that the best interest of the child is protected by applying the same standards under the juvenile rule that apply under the criminal rule—standards that satisfy the due process to

which a child, as well as an adult, is entitled. *See In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *see also Gooding,* 529 A.2d at 305 ("The strictness of our review of Rule 11 violations is necessary because a guilty plea cannot have the effect of waiving constitutional rights without due process.")[3].

We conclude, accordingly, that Judge Walton acted properly in applying the same standards to J.E.H.'s withdrawal motion under Super.Ct.Juv.R. 32(e) as are applied under Super.Ct.Crim.R. 32(e). In a delinquency proceeding, Rule 32(e) incorporates the child's best interest to the extent required in consideration of a predisposition plea withdrawal that necessarily includes recognition of the public interest as well.

**B.**

■ We turn to Judge Walton's ruling on J.E.H.'s plea withdrawal under Super.Ct.Juv.R. 32(e). An appellant may prevail by demonstrating either a "fatal defect in the Rule 11 plea proceeding" or by showing "that justice demands withdrawal in the circumstances of the individual case." *Springs v. United States,* 614 A.2d 1, 3 (D.C.1992) (footnote omitted). J.E.H. has not specified which argument he makes on appeal, but based on his argument alleging the involuntary nature of his plea, and given his failure to assert his innocence, we conclude that his contention is based exclusively on a Rule 11 violation.[4]

detaining children); *id.* § 16–2320(a) (1989 Repl. & 1996 Supp.) (disposition of neglected children); and *id.* § 16–2323(d) (review of dispositional orders). *See In re T.R.J.,* 661 A.2d at 1091–92.

**2.** Super.Ct.Crim.R. 32(e) provides:
    A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.
    Super.Ct.Juv.R. 32(e) provides:
    A motion to withdraw a plea of guilty may be made only before a dispositional order is entered; but to correct manifest injustice the judicial officer after entering a dispositional order may set aside the judgment and permit the respondent to withdraw the plea.

**3.** At oral argument, counsel for J.E.H. argued that failing to apply a best interest standard exclusive of other considerations violated J.E.H.'s constitutional rights. We see no merit in this proposition. A proper Rule 11 hearing, by its nature, provides proper procedural safeguards and considers all attributes of the defendant, including youth and ability to understand the proceedings.

**4.** At oral argument, J.E.H.'s counsel argued that because of J.E.H.'s psychological state, his plea was neither knowing nor voluntary. Even given that assertion, we do not see how the circumstances of this case could justify reversal based on the interests of "justice," the other criterion justifying a plea withdrawal, since J.E.H. has not claimed innocence, a virtual prerequisite for satisfying that criterion. *See Binion,* 658 A.2d at 193.

At the plea hearing, Judge Walton asked J.E.H. if he understood the nature of his plea, the rights voluntarily waived by pleading guilty, and the potential penalties to which he could be sentenced. Judge Walton also inquired whether J.E.H. was under the influence of alcohol or drugs. Finally, Judge Walton asked J.E.H. if anyone had coerced him into pleading guilty or promised him a lighter sentence for pleading guilty. In answer to these questions, J.E.H. replied that he understood his plea, that he was not under the influence of alcohol or drugs, that no one had either coerced him or promised him a lighter sentence for pleading guilty, and that the decision to plead guilty was his own, not that of his lawyer or his mother. We believe the proceeding satisfied all the procedural requirements of Rule 11.[5] J.E.H. can prevail, therefore, only if he can demonstrate "a fatal defect in the Rule 11 proceeding" by showing that his guilty plea was not a " 'voluntary and intelligent choice among the alternative courses of action open to [him].' " *Gooding*, 529 A.2d at 305 (quoting *Byrd v. United States*, 377 A.2d 400, 404 (D.C.1977)).

On June 29, 1995, the hearing on J.E.H.'s motion included testimony by two witnesses called by the defense. The first, Dr. Zelda Teplitz, testified as an expert in psychiatry. Based on the reports of other psychiatrists and on her own one-hour interview with J.E.H., Dr. Teplitz testified that J.E.H. was competent to plead guilty. She also testified, however, that she believed J.E.H. had pled guilty out of fear of his mother and stepfather and because of psychological problems that had made him very susceptible to outside pressures and suggestions—all of which would have had a deleterious effect on his ability to make an informed decision. Dr. Teplitz added that J.E.H.'s time at Oak Hill more than likely had a very deleterious effect on him. She further testified, however, that she could not state with certainty what J.E.H.'s state of mind had been at the plea hearing on January 11, before his confinement to Oak Hill.

Judge Walton also heard from J.E.H.'s stepfather, R.J., who testified that he had advised J.E.H. to plead guilty based on his own personal experiences with the court system and on his belief that such a plea would be best for J.E.H. as a first time offender. R.J. said that he had not threatened J.E.H., but that he had tried to influence J.E.H. to take a plea by persuading him.

The testimony supports Judge Walton's finding that J.E.H. understood the Rule 11 proceeding and knowingly and voluntarily entered his plea. The testimony also supports the judge's finding that, although R.J. had sought to influence J.E.H., he had not coerced J.E.H. into pleading guilty and had not exercised undue influence over him. We conclude, accordingly, that Judge Walton did not abuse his discretion by denying J.E.H.'s motion to withdraw his guilty plea.

*Affirmed.*

---

5. At one point, when it appeared that J.E.H. had doubts about his willingness to plead guilty, Judge Walton asked if he wished to speak with his mother. When J.E.H. answered yes, Judge Walton recessed the proceeding over J.E.H.'s mother's objection that it was not necessary.