Charles BINION, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–1206.

District of Columbia Court of Appeals.

Argued Dec. 17, 1993.

Decided April 28, 1995.

Mark J. Rochon, Washington, DC, for appellant.

Kevin F. Flynn, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, John R. Fisher, Brenda J. Johnson, and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge,* KING, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

Appellant, Charles Binion, was indicted for two counts of first-degree murder while armed, one count of carrying a pistol without a license, and one count of possession of a firearm during a crime of violence or dangerous offense. At the arraignment on April 7, 1992, appellant accepted the government's plea offer and entered a plea of guilty to one count of second-degree murder while armed, one count of voluntary manslaughter, and one count of possession of a firearm during a crime of violence or dangerous offense. Three days later, on April 10, 1992, appellant notified the attorney who had represented him at the plea proceedings (plea attorney) that he wanted to withdraw his plea and proceed to trial. The plea attorney agreed to file a motion to withdraw the plea, but only after meeting with appellant. Prior to sentencing, the plea attorney met with appel-

lant on April 15, 1992, and on April 17, 1992, he filed a motion to withdraw the guilty plea. As grounds for the motion, appellant claimed that he had acted lawfully and in self-defense. After an evidentiary hearing, the trial court denied the motion. Appellant argues that the trial court abused its discretion in denying his pre-sentence motion to withdraw the guilty plea. We affirm.

## I.

During the plea proceeding, the government proffered that if the case proceeded to trial, the evidence would show that on the afternoon of January 11, 1992, appellant was sitting in his black Pathfinder vehicle in the 1500 block of 17th Street, Southeast, Washington, D.C. at about 3:10 p.m. A vehicle driven by Darrell Price, in which Darius Moore and Calvin Hargrove, Jr. were passengers, pulled up alongside appellant's vehicle. Following a conversation, appellant got out of his vehicle and approached Price's vehicle. Appellant began firing a pistol at Hargrove, who ran back to Price's car and jumped in, and Price started driving away. Appellant continued to shoot in the direction of the fleeing vehicle, which he chased after on foot. When Price's car stalled at an intersection, Price and Hargrove got out of it and ran. Appellant continued to shoot at Hargrove. He fired a total of 32 rounds at the men. Appellant then ran back to his vehicle and drove away. Subsequently, he threw the murder weapon into the Potomac River.

Following the shooting, Moore was found in the back seat of Price's vehicle with a fatal gunshot wound to the head. Hargrove, who suffered multiple gunshot wounds to the chest and abdomen, underwent surgery at D.C. General Hospital where he subsequently died from his wounds on February 7, 1992. At the time of his arrest, after being advised of his *Miranda* rights,[1] appellant made a statement to the police, which the prosecutor read into the record at the time of the plea. According to appellant's statement, he fired at Hargrove because he saw him reach for a

---

* *Judge* WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pistol as he approached appellant's vehicle. Appellant said he then "jumped in the truck and pulled off." In the statement, appellant recounted prior incidents of violence in which he thought Hargrove had been involved. He also said that he and Hargrove had "got into it before because back in November [Hargrove] said he was going to kill [appellant's] mother." Appellant explained that he did not know during the shooting that he had shot Darius Moore, who was a lifelong friend, but he was scared and just shooting.

Before accepting the plea, the trial court conducted an inquiry pursuant to Super.Ct.Crim.R. 11, during which the court addressed appellant in an effort to determine if the plea was entered voluntarily.[2] Aware of appellant's statement in which he made the claim of self-defense, the trial court initially addressed appellant about whether he understood that he was giving up his self-defense claim as follows:

I want to make sure that Mr. Binion understands full well that before I can accept his plea, he has to acknowledge on the record that there is no self-defense claim. And that obviously it could be disproved or it would be disproved beyond a reasonable doubt, that you thought about that, that you may have ... subjectively believed that you may have been in some danger but ... based upon your evaluation of the government's evidence and talking with your attorney you understand that you are going to be waiving any self-defense claim ... you have on this record.

The trial court then asked appellant, who was under oath, whether he had heard the government's proffer that he had killed two men, that he had not acted in self-defense, and that there were no mitigating circum-

stances. Before appellant could respond, appellant's counsel interjected that there was a factual basis for the plea in spite of appellant's statement because appellant had continued to chase and shoot at Hargrove after any perceived threat of harm had ended. The trial court then directly inquired of appellant on this aspect of the shooting as follows:

THE COURT: Mr. Binion, based upon the government's proffer, you heard the proffer, that after whatever perceived danger you thought you were in, that you continued to chase and to shoot and eventually kill the victim at a point when apparently that person was fleeing and not at that point posing any danger to your life. You heard the government's statement of its evidence, is the government's statement correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand by pleading guilty you are giving up any self-defense claim that you may have? You understand that?

THE DEFENDANT: Yes, Your Honor.

Having determined that appellant understood his rights and that he voluntarily waived them, including any right to present a self-defense claim, the trial court accepted the plea and scheduled sentencing for May 21, 1992.

Appellant filed a motion to withdraw his guilty plea prior to the scheduled sentencing date. The plea attorney was the only witness who testified at the hearing on the motion.[3] The plea attorney testified that his first substantive meeting with appellant occurred on March 9, 1992. Although there was no outstanding plea offer at that time, he had discussed the subject with appellant who

---

2. Super.Ct.Crim.R. 11(d) requires the trial court to ensure that "any guilty plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *Byrd v. United States*, 377 A.2d 400, 404 (D.C.1977). Here, it appears that the trial court fully complied with the requirements of the rule, and appellant does not contend otherwise. During the course of the inquiry, the court advised appellant of the Constitutional rights he was waiving. Appellant indicated, *inter alia*, that he had gone as far as the tenth grade in school; that he was not under the influence of alcohol or drugs;

that he understood the terms of the agreement, the minimum and maximum penalties he could receive; that he knew that he would have to admit his guilt, give up his right to a trial, and forego a self-defense claim. Appellant indicated that it was his desire to do so and that no promises had been made to him other that those stated on the record.

3. Initially, appellant had been represented by another attorney who withdrew because of a conflict.

gave him authority to contact the United States Attorney's office about a plea offer. Thereafter, the plea attorney engaged in plea negotiations with an Assistant United States Attorney. Their discussions included the alleged violent history and reputation for violence of one of the decedents. They also talked about appellant's claim that he shot one of the victims, a friend, accidentally. The prosecutor provided the attorney with pre-indictment discovery and a copy of appellant's statement. The attorney discussed with appellant the information he obtained, appellant's statement, and the strengths and weaknesses of the defense.

According to the plea attorney, because the potential penalties for the crimes were so great, he did not try to force appellant to accept or reject the offer. He testified that he stressed with appellant the strengths and weaknesses of his case and explained the risks of proceeding to trial, leaving the decision to appellant, after explaining the options.

On March 30, 1992, the date originally scheduled for the plea proceeding, appellant retreated from his original decision to accept it. However, appellant contacted his attorney's office shortly thereafter and left a message that he wanted to accept "responsibility." At a meeting which followed, appellant told his attorney that he wanted the "plea offer reopened." On April 2 and 7, 1992, appellant met with his attorney to discuss the plea offer again. The plea attorney testified that he still did not pressure appellant to accept the offer, although the circumstances placed appellant under pressure. Finally, on April 7th, the attorney asked appellant if he wanted to go forward with the plea, and appellant said, "Yes. I want to accept responsibility for it." The attorney told appellant that he must waive the self-defense claim if he accepted the plea offer. Appellant wanted the court to know about his statement because he did not want to leave the impression that the killings were premeditated. The plea attorney testified that appellant always expressed the belief that he acted in self-defense, even at the time of the plea. However, he testified that much of his discussion with appellant focused upon whether or not he could prevail on a self-defense claim in light of the fact that the shooting continued after any imminent threat of danger had ceased.

Three days after entering the plea, appellant called his attorney and told him that he wanted to withdraw it. The attorney told him that he wanted to talk with him before presenting his request to the court. Both appellant and his mother asked the attorney to file the motion that very day and to talk with appellant afterwards. The attorney explained that he wanted to ascertain first the reasons for the motion, but he agreed to relate to the court the date of appellant's call seeking to withdraw the plea. The attorney saw appellant on April 15th and filed the motion on April 17th. Appellant's plea counsel had extensive experience with these types of criminal cases, a fact which appellant's present counsel conceded at the hearing.

Following the hearing, the trial court made detailed factual findings and denied the motion. The trial court concluded that, accepting appellant's factual assertions, he had not raised a true self-defense claim as a matter of law. Having considered the informed and uncoerced nature of appellant's initial decision to plead guilty, appellant's statement to the police, and the basis for the self-defense claim, and having weighed the factors for consideration as derived from pertinent case law, the trial court denied the motion.

## II.

Except upon a showing of manifest injustice, "[a] motion to withdraw a plea of guilty ... may be made only before sentence is imposed or imposition of sentence is suspended[.]" Super.Ct.Crim.R. 32(e). The rule specifies no particular standards for action on such pre-sentencing motions. *Id.* Our cases hold that a defendant may move to withdraw a guilty plea under Rule 32(e) by establishing either of two independent grounds: (1) a fatal defect in the Rule 11 proceeding during which the guilty plea was taken; or (2) that justice demands withdrawal under the circumstances of the particular case. *Springs v. United States,* 614 A.2d 1, 3 (D.C.1992) (citing *Gooding v. United States,* 529 A.2d 301, 305–06 (D.C.1987)). Here, ap-

pellant claims no defect in the Rule 11 proceeding. He argues that justice demands withdrawal because of (1) his persistent claim of self-defense, (2) the minimal delay between the plea and the motion to withdraw it, and (3) the absence of any prejudice to the government.

■ Appellant moved to withdraw his plea of guilty before sentencing; therefore, the motion is reviewed under a more lenient standard which permits withdrawal "if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), *cited in Gooding, supra,* 529 A.2d at 306, and *Taylor v. United States,* 366 A.2d 444, 447 (D.C.1976) (per curiam). Leave to withdraw a guilty plea prior to sentencing should be freely granted. *Gooding,* 529 A.2d at 306 (citing *Poole v. United States,* 102 U.S.App.D.C. 71, 75, 250 F.2d 396, 400 (1957)). While motions to withdraw guilty pleas filed before sentencing are considered more favorably than those filed after sentencing, withdrawal of a plea is not a matter of right, and the determination of whether the defendant has met the "fair and just" standard for withdrawing the guilty plea is left to the trial court's sound discretion. *Jordan v. United States,* 350 A.2d 735, 737 (D.C.1976) (citations omitted); *see also Austin v. United States,* 356 A.2d 648, 649 (D.C.1976). Accordingly, the trial court's decision on the motion will not be disturbed absent an abuse of discretion. *Patterson v. United States,* 479 A.2d 335, 340 (D.C.1984) (citing *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981)).

■ In exercising its discretion and applying the "fair and just" standard, the trial court should consider the following factors: (1) whether the defendant has asserted a claim of legal innocence; (2) the length of the delay between entry of the plea and defendant's desire to withdraw it; and (3) whether the defendant had the benefit of competent counsel at all times relevant thereto. *Springs, supra,* 614 A.2d at 4 (citing *Gooding, supra,* 529 A.2d at 306–07). Other cir-

cumstances of the particular case may reveal other factors which will bear upon the determination in applying the "fair and just" standard. *Id.* (citing *Gooding,* 529 A.2d at 307). "None of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case." *Gooding,* 529 A.2d at 306.

■ Appellant expressed his desire to withdraw the plea to his attorney only three days after he entered it, and he urged the attorney to file the motion immediately. He filed his motion within ten days of the plea. "[T]he standard for judging the movant's reasons for the delay remains low where the motion comes only a day or so after the plea was entered." *United States v. Barker,* 168 U.S.App.D.C. 312, 326, 514 F.2d 208, 222, *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Such a prompt request suggests that the plea may have been entered in haste and confusion. *Id.; accord, Gooding, supra,* 529 A.2d at 307. In addition, the government can rarely claim prejudice to its legitimate interests when a defendant acts so quickly in seeking withdrawal of a plea.[4] *Barker,* 168 U.S.App.D.C. at 326, 514 F.2d at 222; *Gooding,* 529 A.2d at 311. Indeed, the government makes no claim of prejudice on appeal. The absence of any undue delay and the absence of prejudice to the government's legitimate interests are factors which weigh in favor of granting the motion to withdraw under the fair and just standard in this case. *See id.*

On the other hand, the trial court's finding that appellant had the benefit of competent counsel at the time the plea was entered weighs against him in evaluating the request. *See Gooding, supra,* 529 A.2d at 307, 311. In the trial court, appellant conceded that he had the benefit of being represented by competent counsel at the relevant time, and he takes no contrary position on appeal. This factor provides weight to the trial court's conclusion that it would not be fair and just to allow appellant to withdraw his plea.

---

**4.** Prejudice to the government is measured as of the time a defendant seeks to withdraw the guilty

plea, not later. *Gooding, supra,* 529 A.2d at 307.

■ We turn then to consideration of an important factor in applying the fair and just standard, *i.e.,* "whether the defendant has asserted his or her legal innocence." *Gooding, supra,* 529 A.2d at 306 (citing *Everett v. United States,* 119 U.S.App.D.C. 60, 63 n. 10, 336 F.2d 979, 982 n. 10 (1964)). A subsequent assertion of innocence, standing alone, does not require the granting of the motion to withdraw a guilty plea. *Id.; Springs, supra,* 614 A.2d at 4; *see also Patterson, supra,* 479 A.2d at 340. We have said that

> [a]lthough important, a claim of legal innocence ... is not dispositive either way in determining, where a Rule 11 violation is not at issue, whether it is fair and just that a presentence withdrawal motion be granted.

*Gooding,* supra, 529 A.2d at 306 n. 8. As the *Barker* court pointed out,

> [w]hile some decisions have come close to suggesting that a mere assertion of innocence is enough to merit withdrawal, each of these cases involved the additional, and obviously important, consideration that the guilty pleas at issue had been entered under highly questionable circumstances.

*Barker, supra,* 168 U.S.App.D.C. at 325, 514 F.2d at 221; *see, e.g., Hunter v. United States,* 548 A.2d 806, 809 (D.C.1988).[5] While a claim of legal innocence is a compelling consideration, *Patterson, supra,* 479 A.2d at 340, it does not give rise to an automatic right to withdraw the plea. *Barker,* 168 U.S.App.D.C. at 325, 514 F.2d at 221.

■ In seeking to withdraw a guilty plea, a defendant's naked assertion of innocence is insufficient. A defendant must "set forth some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability." *Springs, supra,* 614 A.2d at 5 (citing *Barker, supra,* 168 U.S.App.D.C. at 324, 514 F.2d at 220). Appellant's statement to the police clearly shows that he initially asserted a factual basis for a claim of self-defense. At that time he contended that he

thought that one of the victims was armed and reaching for a pistol when he shot the victim. However, at the plea proceeding, appellant unequivocally stated that he was relinquishing any self-defense claim. Moreover, he admitted under oath the accuracy of the government's proffer that he chased down his victims and shot them after the danger had ceased. No doubt, a fact critical to the trial court's rejection of appellant's request to withdraw the motion was that appellant never disavowed this admission.

■ Accepting appellant's last version of the facts as true, the trial court found that no legally cognizable defense had been advanced under the law of self-defense. In that connection, the trial court stated:

> Accepting [appellant's] factual assertions as true, as I will ... these factual assertions if established at trial could not provide a basis for a self-defense instruction with regard to the death of [either victim].

It is true that in considering a motion to withdraw, the trial court should not try to resolve the merits of the self-defense claim. *Springs, supra,* 614 A.2d at 5 (citing *Gearhart v. United States,* 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959)); *Hunter, supra,* 548 A.2d at 809; *Gooding, supra,* 529 A.2d at 306. The trial court did not do so. It accepted appellant's complete account of the incident, including the unrecanted portion given under oath at the time of the plea.

■ In order to make out a legally cognizable claim of self-defense, an accused using deadly force, "must—*at the time of the incident* —actually believe and reasonably believe that he is in imminent peril of death or serious bodily harm." *McPhaul v. United States,* 452 A.2d 371, 373 (D.C.1982) (citations omitted) (emphasis added). "[T]he right of self-defense arises only when the necessity begins, and equally ends with the necessity...." *United States v. Peterson,* 157 U.S.App.D.C. 219, 226, 483 F.2d 1222, 1229, *cert. denied,* 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *see also Harper v. Unit-*

---

5. In *Hunter,* this court reversed an order of the trial court denying withdrawal of a plea where the defendant made an early assertion of legal innocence, the trial court had difficulty in communicating with the defendant, and a psychologi-cal evaluation for the defendant became available prior to sentencing which cast doubt on defendant's ability to understand the Rule 11 proceeding. *Hunter,* 548 A.2d at 809–11.

*ed States,* 608 A.2d 152, 154 (D.C.1992). Appellant has never repudiated his sworn statement at the plea proceeding that he shot the victims at a time when his life was no longer in peril. As the trial court found, the facts to which appellant admitted, under oath, when accepted as true, belie any effective denial of culpability. *See Harper,* 608 A.2d at 154; *see also Peterson,* 157 U.S.App.D.C. at 226, 483 F.2d at 1229. While appellant's statement to the police standing alone might amount to a claim of legal innocence, his unretracted, sworn admission at the time of the plea of the additional circumstances surrounding the shooting defeats any claim of a legally cognizable defense.[6] Where the movant's factual contentions, when accepted as true, "make out no legally cognizable defense to the charges, he has not effectively denied culpability, *and his withdrawal motion need not be granted.*" *Barker, supra,* 168 U.S.App.D.C. at 324, 514 F.2d at 220; *accord, Jordan, supra,* 350 A.2d at 738. The government's strong proffer also undercuts appellant's post-plea claim of innocence. *See Gooding, supra,* 529 A.2d at 309 (weaknesses in government's proffer may tend toward allowance of withdrawal of the plea).

A motion to withdraw a guilty plea, whether made before or after sentencing, is left to the sound discretion of the trial court. *Gooding, supra,* 529 A.2d at 306, 311; *Patterson, supra,* 479 A.2d at 340. On appeal, this court must determine whether the trial court abused its discretion in denying the motion when applying the fair and just standard. *Morton v. United States,* 620 A.2d 1338, 1340 (D.C.1993); *Jordan, supra,* 350 A.2d at 737. Applying the principles extracted from pertinent precedents, we must determine whether the trial court acted within the permissible limits of its discretion. *See Gooding, supra,* 529 A.2d at 311 (citing *Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979)). Considering that appellant concededly had competent counsel at all relevant times, the absence of a legally cognizable defense on the facts to which appellant admitted under oath, the absence of any Rule 11 violation,[7] and the

absence of other special circumstances,[8] we cannot say that the trial court abused its discretion in denying the motion.

Accordingly, the decision of the trial court hereby is

*Affirmed.*

---

6. It should be expected that in asserting a claim of legal innocence a defendant would disavow his prior sworn assertions which reflect his culpability. This appellant failed to do.

7. *See Gooding, supra,* 529 A.2d at 306 n. 8.

8. *See Hunter, supra,* 548 A.2d at 809–11.