Bruce D. PIERCE, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CO–836.

District of Columbia Court of Appeals.

Argued Dec. 12, 1996.

Decided Dec. 30, 1997.

---

Frances M. D'Antuono, appointed by this court, for appellant.

James G. Flood, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and June M. Jefferies, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant contends that the trial court conducted an inadequate inquiry prior to accepting appellant's pleas of guilty to second degree murder and another contemporaneous offense, and that the court subsequently abused its discretion when it declined to conclude that it would have been fair and just to permit appellant to withdraw his guilty plea. We disagree with appellant's contentions, and affirm.

## I.

On February 12, 1990, appellant Bruce D. Pierce pleaded guilty to murder in the second degree while armed and mayhem while armed for the November 1988 stabbing of Deanna Pannell, who died from her wounds, and her daughter Shameeka, whose hand was almost severed by the attack. Before appellant pleaded guilty, the trial court conducted an inquiry pursuant to Super. Ct. Crim. R. 11 and was satisfied that appellant understood the consequences of his plea and entered his plea voluntarily.

When appellant appeared before the same judge for sentencing on April 30, 1990, he handed counsel a written letter addressed to the court indicating that he wished to withdraw his plea. Appellant's original counsel subsequently withdrew and, on March 4, 1991, appellant's new (and present) counsel filed a written motion to withdraw appellant's guilty plea under Super. Ct.Crim. R. 32(e).

On July 22, 1991, the judge ordered a retrospective competency evaluation [1] which determined that appellant was competent when he pled guilty. Thereafter, another judge, who presided because the original judge was no longer available, held hearings on the Rule 32(e) motion to withdraw on various dates from June 15, 1992, until December 30, 1992. On June 18, 1993, the trial court issued a memorandum opinion and order denying the motion. After the court imposed sentence, appellant filed a timely notice of appeal.

## II.

■ A defendant may successfully move to withdraw a guilty plea under Rule 32(e) by establishing that either (1) there was a fatal defect in the Rule 11 proceeding when the guilty plea was taken; or (2) justice demands withdrawal under the circumstances of the case. *Binion v. United States,* 658 A.2d 187, 190 (D.C.1995) (citations omitted).[2] We review the trial court's disposition of a 32(e) motion to withdraw a guilty plea for abuse of discretion. *Carmichael v. United States,* 479 A.2d 325, 327 (D.C.1984) (citations omitted).

### A. Adequacy of the Rule 11 Inquiry

■ Appellant maintains the trial court conducted an inadequate Rule 11 inquiry because the court did not know of appellant's mental retardation or functional illiteracy, and did not fully address the influence of medication on appellant, and thus failed to determine adequately whether he knowingly, voluntarily, and intelligently waived his constitutional rights.[3] *See United States v. Masthers,* 176 U.S.App. D.C. 242, 249–50, 539 F.2d 721, 728–29 (1976) (noting that "the standard Rule 11 colloquy may prove an inadequate measure of the validity of a plea proffered by a defendant of questionable mental competence"), *overruled on other*

grounds by *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (holding competency standard for pleading guilty or waiving right to counsel is same as competency standard for standing trial, and disapproving contrary holding of *Masthers* ).

The importance of a Rule 11 inquiry is well recognized:

> It is fundamental to due process that a defendant who waives constitutional rights in entering a plea of guilty must do so voluntarily, knowingly, and intelligently. 'Overwhelming proof of a defendant's guilt proffered by the government does not overshadow the fundamental right of a defendant to choose between proceeding to trial or, in the alternative, making a voluntary and intelligent waiver of that right and other rights pursuant to a plea agreement.' The requirement that a guilty plea be knowing and intelligent is also implicit in Super. Ct.Crim. R. 11, and underlies its specific directives to the trial judge.

*Eldridge v. United States,* 618 A.2d 690, 695 (D.C.1992) (citations omitted and quoting *Goodall v. United States,* 584 A.2d 560, 563 (D.C.1990) (per curiam)).

■ If issues of competency have been raised on the record, "the trial court must conduct 'a specialized hearing to determine the competence of a defendant who seeks to plead guilty. . . .' " *Hunter v. United States,* 548 A.2d 806, 810 (D.C.1988) (quoting *Willis v. United States,* 468 A.2d 1320, 1323 (D.C. 1983)).

> Thus, under *Willis,* before the trial court may determine whether the accused *in fact* understands the important procedural safeguards relinquished in pleading guilty, the court has an obligation to satisfy itself that the defendant has the mental capacity to achieve the necessary understanding. *Willis,* which involved a post-sentence mo-

1. While case law often refers to the examination at issue here as a "retroactive" competency examination, it is better described as a "retrospective" competency examination.

2. Super. Ct.Crim. R. 32(e) (1996) states:
 Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed

or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

3. *See* Super. Ct.Crim. R. 11(c) (1996) (outlining matters court must determine defendant understands); (d) (ensuring that the plea is voluntary); and (f) (determining accuracy of plea).

tion to withdraw a plea, is no less applicable to a presentence plea.

*Hunter, supra,* 548 A.2d at 810 (footnote omitted and citing *Masthers, supra,* and *Carmichael, supra* ).[4] Likewise, the requirements of *Willis* are no less applicable to appellant's presentence motion to withdraw his plea.

Thus, the questions we face in the instant case are (1) whether the Rule 11 inquiry by itself was adequate, and (2) whether the retrospective competency examination and the extensive Rule 32(e) hearings satisfy the *Willis* requirement of a careful inquiry or, as stated in *Hunter,* whether the court "satisf[ied] itself [through the retrospective competency examination and the hearings] that the defendant ha[d] the mental capacity to achieve the necessary understanding" of "the important procedural safeguards relinquished in pleading guilty."

The record reveals that the original trial judge conducted a standard Rule 11 inquiry, asking the appellant, among other things, whether he understood that he did not have to plead guilty and instead could proceed to trial. The judge also asked whether appellant was entering his guilty plea voluntarily, engaged in a dialogue with appellant when a question arose on voluntariness, and asked whether appellant was taking any medication that would affect his ability to understand the plea. Finally, the judge asked both counsel whether they believed any additional questions needed to be asked to satisfy Rule 11, and both responded "no."

The government maintains that the trial court asked questions adequate to satisfy itself that the defendant had sufficient mental capacity to understand the pleading process and its consequences. *See Luckey v.*

*United States,* 562 A.2d 130, 133 (D.C.1989) (per curiam) (appellant unable to show substantive defect in Rule 11 proceeding where trial judge asked him about drug use, asked counsel whether they knew any reason plea should not be accepted, and found appellant did not suffer from mental impairment; record barren of type of information to put trial judge on notice that further inquiry on appellant's competence to plea was required). Nothing in the record in this case indicated to the trial court that further inquiry on appellant's competence was required.[5] Thus, there was no error in the manner in which the trial court conducted the Rule 11 inquiry and accepted appellant's plea of guilty.

Appellant's second counsel, however, raised the issue of appellant's competency at the time of his plea in her written motion to withdraw the guilty plea, and the court ordered a retrospective competency examination. Therefore, we next consider whether the retrospective competency examination and the Rule 32(e) hearings satisfied the requirement of a special inquiry mandated by *Willis* and *Hunter.*

■ Appellant argues that the trial court erred in relying upon the retrospective competency examination performed by Drs. Bernthal and Patterson and in making its own retrospective competency determination based upon the record of the Rule 32(e) hearings. He asserts that the Supreme Court has found such retrospective competency hearings to be of dubious merit and for that proposition cites *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

*Drope,* however, is not controlling here. In that case there was a six year hiatus between the time of the proposed examination and the earlier time as to which a competency issue had arisen.[6] In contrast, the

---

4. In *Hunter,* when the issue of appellant's competency to plead was before the trial court, the judge denied appellant's presentence "motion to withdraw his guilty plea without first requesting to see the psychological evaluation and, depending on its contents, conducting a special inquiry into appellant's competence." 548 A.2d at 811. We reversed and found the judge's reliance on her personal observations of appellant as a basis on which to determine his competency "misplaced" under *Masthers.*

5. Dr. Cambosos, a psychiatrist who saw appellant at least once a month during the fifteen months preceding his guilty plea and thereafter as well, testified at the Rule 32(e) hearings that someone who did not know that appellant was taking medication would have had no reason based upon appellant's appearance or conduct at the time of the plea to think that he was medicated.

6. In *Drope* the Supreme Court did not hold that a retrospective competency examination was of dubious merit, but determined that petitioner's due

retrospective competency examination in this case was conducted and a report issued less than two years after appellant's plea. Appellant pleaded guilty on February 12, 1990, and filed his motion to withdraw his guilty plea on March 4, 1991. The trial court ordered the examination in July of that year, and the report of the two doctors who conducted the examination was submitted on October 31, 1991.

■ While retrospective determinations of competency are not always appropriate, their usefulness must be judged on a case by case basis, and we see no error by the trial court either in considering the retrospective competency examination or in making its determination of competency through the Rule 32(e) hearings. *See Masthers, supra,* 176 U.S.App. D.C. at 250, 539 F.2d at 729 (ordering retrospective determination of competency to enter plea of guilty two and one-half years after plea); *de Kaplany v. Enomoto,* 540 F.2d 975, 985–86 & n. 11 (9th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977) (allowing use of retrospective determination of competency to plead guilty where court was able to hear testimony from expert witnesses and defense trial counsel, and review expert conclusions regarding defendant's competency); *see also Miller v. Dugger,* 838 F.2d 1530, 1544 (11th Cir.) *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). ("The determination of whether a district court can hold a meaningful competency hearing is necessarily a case-by-case one.").

We are satisfied that in this case the trial court's retrospective competency evaluation was entirely appropriate. The trial court specifically noted that the best evidence of

the effect of medication upon appellant at the time he entered his plea and shortly before was what persons in contact with appellant observed at that time (rather than appellant's self-serving remarks made two years later). The court again focused on the time of the plea when it considered appellant's mental state. The trial court conducted a lengthy hearing during which psychiatrists and psychologists testified as to his mental state. Several of these doctors had examined appellant before his plea and several had evaluated him afterwards. Moreover, the experts who conducted the retrospective competency examination relied on evidence pertaining to appellant's mental state at periods both before and after the plea.[7]

■ Appellant places heavy emphasis on his claim that he was mentally retarded, and accordingly we will address specifically the trial court's treatment of that claim. Clearly, where it is alleged that an individual is mentally retarded, the trial court must consider that factor when determining whether an individual "has the mental capacity to achieve the necessary understanding" of a guilty plea. *See Hunter, supra,* 548 A.2d at 810 (citing *Masthers, supra,* where the defendant was mentally retarded). Additionally, we have stressed that this is an area where expert testimony should be considered and a trial judge should refrain from relying on personal observations of the individual. *Hunter, supra,* 548 A.2d at 810–11 (expert informed judge that appellant appeared to be suffering from organic brain damage); *cf. Mitchell v. United States,* 609 A.2d 1099, 1104 (D.C.1992) (advising trial judge to have assistance of expert guidance and not rely on one's own perceptions where appellant is al-

process rights would not be adequately protected by remanding the case for a belated competency examination. The opinion was issued in 1975 and the examination, if it was ordered, would have been conducted for the purpose of establishing whether or not petitioner was competent to stand trial in 1969, some six years earlier. The court concluded a remand would not be adequate "[g]iven the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances." 420 U.S. at 183, 95 S.Ct. at 909.

**7.** We note that the motions judge specifically highlighted the court's use of the retrospective

competency examination prepared by the two doctors:

> The court-ordered competency evaluation is useful because it brings mental health professionals' judgment to bear on some of the same data available to the Court at this hearing, and its conclusion is not the basis for, but rather reinforces the Court's own finding—based on a careful consideration of all the evidence—that neither mental illness nor limited intelligence provide a basis for allowing Mr. Pierce to withdraw his guilty plea.

legedly mentally ill, citing *Hunter* and *Masthers* ).

Here, the trial court had such expert guidance on the issue of appellant's alleged mental retardation. While appellant presented expert testimony of one witness that appellant scored a 66 on an IQ examination, thus classifying him as mentally retarded, another expert reported he did not believe appellant to be mentally retarded. Moreover, none of the other mental health experts categorized appellant as mentally retarded based on their observations of him. The court had before it New York school records from the time appellant was enrolled there indicating he was not mentally retarded. In fact, appellant scored almost twenty points higher on the IQ examination administered while he was a 12 year old student in New York than he did when tested by a defense expert during the Rule 32(e) hearings. The appellant's expert witness also admitted on cross-examination that even if appellant was mentally retarded it was not possible to say that appellant did not understand the pleading process and his option of going to trial. In light of all the evidence and the expert guidance the court received and considered, we cannot say the trial court misspoke when it observed that even if appellant should be classified as mentally retarded, all of the evidence regarding his actual functioning in 1989 and 1990 supports a finding that he knowingly, intelligently, and voluntarily pleaded guilty.

In sum, the record supports the government's argument that the trial court permissibly based its competency ruling on appellant's lack of credibility, the lack of evidence that he experienced his alleged symptoms while visiting with any of the many psychiatrists or psychologists with whom he met prior to, at the time of, and after his plea, the lack of facts to support his belated claim of innocence, and the showing that he had effective and able legal counsel. We are satisfied that the record was entirely adequate to sustain the trial court's ruling concerning appellant's competency at the time of his guilty plea.

## B. Withdrawal in the Interests of Justice

 A defendant can withdraw a guilty plea, under the second prong of Rule 32(e), if defendant establishes "that justice demands withdrawal under the circumstances of the particular case." *Binion, supra,* 658 A.2d at 190. Because appellant here moved to withdraw his guilty plea before sentencing, "the motion is reviewed under a more lenient standard which permits withdrawal 'if for any reason the granting of the privilege seems fair and just.'" *Id.* at 191 (quoting *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)).[8] "'Leave to withdraw a guilty plea prior to sentencing should be freely allowed.'" *Gooding, supra* note 8, 529 A.2d at 306 (quoting *Poole v. United States,* 102 U.S.App. D.C. 71, 75, 250 F.2d 396, 400 (1957)). Nevertheless, we will reverse the denial of a motion to withdraw only upon a showing of abuse of discretion by the trial court. *Springs v. United States,* 614 A.2d 1, 4 (D.C.1992); *Gooding, supra* note 8, 529 A.2d at 306 (citation omitted).

 Under the fair and just standard, the court is to consider a number of factors cumulatively; no single factor is controlling. *Gooding, supra* note 8, 529 A.2d at 306. These factors include (1) whether the defendant has asserted his legal innocence, (2) the length of delay between entry of the guilty plea and the expression of the desire to withdraw it, and (3) whether the defendant has had the full benefit of competent counsel at all relevant times. *Id.* at 306–07. Here, the motions judge methodically assessed these factors and concluded appellant had not offered an adequate basis for granting the motion to withdraw his plea under the "fair and just" standard.

### 1. Assertion of Legal Innocence

 An assertion of legal innocence by the defendant is a prerequisite to the granting of a motion to withdraw a plea of

---

**8.** We have stated that "[w]here the accused asserts, but fails to establish, a Rule 11 violation, the trial court should nonetheless consider the fair and just factors in order to determine whether that alternative standard demands that the withdrawal motion be granted." *Gooding v. United States,* 529 A.2d 301, 306 (D.C.1987).

guilty but, standing alone, it does not require the trial court to grant the motion. *Springs, supra,* 614 A.2d at 4. *See also Gooding, supra* note 8, 529 A.2d at 306 n. 8 (describing a claim of legal innocence as not being dispositive either way and labeling it as one of many factors to be considered). The "movant must set forth some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability." *Springs, supra,* 614 A.2d at 5 (citations omitted). When the defendant asserts a defense to the charge, the court should not attempt to decide the merits of the proffered defense to determine the guilt or innocence of the defendant. *Gooding, supra* note 8, 529 A.2d at 306 (citations omitted). "On the other hand, the court may consider a weak government proffer of evidence to prove guilt [as a factor favoring granting the motion]." *Id.* (citation omitted). In addition, the court should consider why the claimed defense was not offered at the time of the original pleading. *Id.*

In its evaluation of appellant's assertion of innocence, the trial court noted that there appeared to be no reason for appellant's delay in his assertion of innocence and thus it was not timely. *Cf. Gooding, supra* note 8, 529 A.2d at 310 (appellant failed to assert coercion defense at time of original pleading because he feared reprisals against self and family). Although appellant initially claimed not to have committed the crimes, he confessed on December 7, 1988, and did not assert his innocence until he filed his formal motion to withdraw on March 4, 1991. Appellant never indicated to the trial court during the plea proceeding or sentencing, nor did he ever indicate to his original defense counsel, that he wanted to withdraw his plea because he was innocent. *Cf. Gooding, supra* note 8, 529 A.2d at 308–09 (appellant had spoken with counsel about coercion defense before Rule 11 proceeding, and during entry of his guilty plea his cryptic responses were consistent with that defense).

In its evaluation of this factor, the trial court credited the testimony of the original defense counsel as to why appellant sought to withdraw his plea at a fairly late date. After appellant handed original counsel the note indicating he wanted to withdraw his plea, appellant told counsel that he had talked with fellow inmates who convinced appellant that "he owed it to himself to take it to trial." *See Springs, supra,* 614 A.2d at 4–5 (affirming trial judge's denial of presentence motion to withdraw plea where appellant claimed that he had not been in the "right frame of mind" and made what was virtually a bald assertion of innocence).

The court stated accurately that in ruling on the motion to withdraw it was not to evaluate the merits of any defense put forward by the appellant (who ultimately asserted that an individual named Patrick was the real murderer), but noted the strength of the government's proffered evidence which included victim Shameeka Pannell's photographic and lineup identifications. We find nothing indicative of abuse of discretion in the trial court's evaluation of the factor of assertion of legal innocence.

## 2. Length of Delay

█ In examining the length of delay between the entry of the guilty plea and the desire to withdraw it, the court should consider whether the government would be prejudiced by a withdrawal of the plea measured as of the time the defendant sought to withdraw it, not some time later. *Springs, supra,* 614 A.2d at 4 (citing *Gooding* ); *Gooding, supra* note 8, 529 A.2d at 307 (" 'A swift change of heart is itself a strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the government's legitimate interests.' Withdrawal motions promptly made are regarded with 'particular favor.' ") (citations omitted).

Here the trial court noted that appellant first desired to withdraw his plea eleven weeks after he entered his guilty plea. Thus this factor weighed against granting the motion to withdraw. *Compare Springs, supra,* 614 A.2d at 7–8 (appellant first desired to withdraw plea three weeks after plea; defense counsel at appellant's request moved to strike motion to withdraw; finally eight weeks after plea appellant again moved to withdraw plea; trial court did not err in concluding factor weighed against appellant

because delay considerable), *with Gooding,* *supra* note 8, 529 A.2d at 310–11 (appellant expressed desire to withdraw a few days after plea; government did not claim prejudice and probably could not do so given time frame). The trial court accurately concluded here that the "eleven-week hiatus hardly manifests the 'swift change of heart' that would indicate the defendant entered his plea in haste and confusion" and cited *Gooding* and *Springs.*

■ We note, however, that the trial court may have given inappropriate consideration to other dates in examining the delay factor. *Springs* announced that prejudice to the government is "measured as of the time the defendant sought to withdraw [the plea], not some time later." 614 A.2d at 4. In analyzing the delay factor here, the trial court noted (after discussing the eleven week delay) that after defense counsel filed a formal motion to withdraw the plea (approximately one year after the plea), another year passed before the hearing began. The hearing itself took over nine months to conclude, and the order was issued approximately three months after post-hearing arguments were made and briefs were filed. Under *Springs* the time that passed after appellant expressed his desire to withdraw the plea cannot be considered in examining the prejudice to the government. To the extent the court considered and gave weight to this additional time period, it erred. But under the circumstances, any such error of itself is not so substantial as to require reversal because the eleven week delay itself weighed substantially against granting the motion to withdraw the plea. *See Springs, supra,* 614 A.2d at 7–8. Moreover, it is clear to us upon reading the motion judge's memorandum order that any departure from the appropriate factor was not outcome determinative. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

### 3. Competency of Counsel

■ Another factor is whether or not the defendant enjoyed the full benefit of competent counsel at all relevant times. *Springs, supra,* 614 A.2d at 4. To benefit by consideration of this factor, "appellant must show

that counsel's advice 'fell short of the range of competence demanded of attorneys in criminal cases' and motivated his plea." *Williams v. United States,* 595 A.2d 1003, 1006 (D.C.1991) (citations omitted) *see Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985) (effective assistance of counsel in context of a guilty plea embraces the same objective standard as in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The trial court outlined all the steps defense counsel took in preparing this case. The court also noted that appellant never complained about counsel's representation until the formal motion to withdraw was filed. In fact, the only reason original defense counsel withdrew from the case was that the government opposed appellant's Rule 32(e) motion and sought to call counsel as a witness in the hearing, not because appellant was asking for a new lawyer. It is apparent from the facts developed during the hearings and the twenty pages in the trial court's order in which it reviewed the work of the original defense counsel that the record supports the court's finding that appellant had the benefit of competent counsel at all times.

In sum, appellant was unable to demonstrate that there was a defect in the Rule 11 proceeding as it was handled by the judge who accepted the plea. His subsequent challenges to that proceeding based upon his mental competence and the quality of his legal representation were fully addressed and resolved by the trial court in the lengthy Rule 32(e) hearings. The court engaged in a thorough inquiry to ascertain whether appellant knowingly, intelligently, and voluntarily pleaded guilty. This inquiry included an appropriate retrospective competency determination in the course of which the trial court adequately considered whether appellant's alleged mental retardation affected his ability to plead. Finally, appellant was unable to demonstrate that justice demanded permitting him to withdraw his guilty plea. We perceive no abuse of discretion by the trial court in denying relief under the 'fair and just' standard. *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979).

Accordingly, the order of the trial court denying appellant's motion to withdraw is hereby

*Affirmed.*

WAGNER, Chief Judge, dissenting:

In my opinion, under the more lenient "fair and just" standard, the trial court erred in denying Pierce's pre-sentence motion to withdraw guilty plea. *See Gooding v. United States,* 529 A.2d 301, 306 (D.C.1987). Pierce, who was about seventeen years old at the time of the plea, is "undisputed[ly] functionally illiterate," and he was taking prescribed antidepressant medication at the time of the plea, according to the trial court's findings.[1] The trial court also found that Pierce was from a "chaotic and dysfunctional family background," received a written death threat from someone at the jail in June 1989, and was placed in lock-down status at the jail. In seeking to withdraw the plea of guilty which he entered on February 12, 1990, Pierce contended that the plea was not voluntarily and knowingly entered because of the effects of his medication and his mental condition and limitations, among other reasons.

In applying the "fair and just" standard using the factors outlined in *Gooding, supra,* to the facts of this case, in spite of its careful and thoughtful analysis, the trial court took into account an improper factor and did not accord fair consideration to other relevant factors. "An important factor in these fair and just withdrawal motions is whether the defendant has asserted his or her legal innocence." *Gooding,* 529 A.2d at 306 (citation omitted). Where the accused asserts a defense, the trial court is not to decide its merits or determine guilt or innocence. *Id.* Pierce asserted the defense that another person, one Patrick, committed the offense, a claim which he made when first questioned by the police about the case. In weighing this factor against Pierce, the trial court took into consideration "his confession, the strength of the government's proffer, and his sworn adoption of the facts contained in that proffer when he pled guilty." Thus, the court apparently weighed the evidence, rather than determining from the facts underlying the asserted defense whether Pierce presented a cognizable defense, as *Gooding* contemplates.[2] *Id.* at 306–07. The court also considered the delay in Pierce's assertion of innocence in evaluating his assertion of legal innocence. While the delay between the entry of the guilty plea and the expression of the defendant's desire to withdraw it is appropriately a separate factor for consideration, it has no bearing on whether the claim for relief is supported by a legally cognizable defense. *See id.; see also Springs v. United States,* 614 A.2d 1, 6 (D.C. 1992).

The trial court considered the length of time between Pierce's plea and his request to withdraw it and weighed the factor against him. In doing so, the court considered that although only eleven weeks intervened between the plea and Pierce's request to withdraw it, another eleven months elapsed between the time his successor counsel filed a formal motion, and another two years elapsed before the motion was heard and decided. Therefore, the court concluded that the delay for that entire period weighed against granting the motion. As the majority opinion observes, "[u]nder *Springs* the time that passed after [Pierce] expressed his desire to withdraw the plea cannot be considered in examining the prejudice to the government." *See Springs, supra,* 614 A.2d at 4 (citation omitted). Therefore, it was error to consider it. The merger of the delay and prejudice factors also appear to have prevented a fair consideration of each.[3]

1. Pierce reported to the court at the time of the plea that he was taking antidepressant medication, which the trial court determined in the post-plea proceeding to be a 75 mg. dose of Sinequan.

2. The court also appears to have considered the timing of Pierce's claim of innocence in reviewing both the assertion of innocence factor and the length of delay between entry of the guilty plea and the motion.

3. For example, in considering separately the length of time between Pierce's plea and his request to withdraw it, it would have been fair to consider that he is functionally illiterate, has tested retarded, was in lock-down, and frequently on medication for a mental condition.

"Whether the defendant has met the 'fair and just' standard for withdrawing the guilty plea is left to the trial court's sound discretion." *Binion v. United States,* 658 A.2d 187, 191 (D.C.1995) (citing *Jordan v. United States,* 350 A.2d 735, 737 (D.C.1976)). For the foregoing reasons, it appears that the trial court took into account an improper factor and did not adequately consider other relevant factors, and therefore, abused its discretion in resolving Pierce's motion. *See Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979). Accordingly, I respectfully dissent from the opinion of the court.