Jayvon R. WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CF–836.

District of Columbia Court of Appeals.

Argued Nov. 15, 2004.

Decided Dec. 30, 2004.

Deborah A. Persico, Washington, DC, for appellant.

Emily A. Miller, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Barbara J. Valliere, and Kenneth C. Kohl, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and FERREN, Senior Judge.

RUIZ, Associate Judge:

Pursuant to an agreement with the government, on September 4, 2001, the appellant pled guilty to one count of second-degree murder while armed, and one count of possession of a firearm during a crime of violence; the remaining counts of the indictment were dismissed.[1] Before he was sentenced, the appellant—now represented by substitute counsel appointed at his request—filed a motion with the Superior Court, seeking to withdraw his guilty plea, asserting for the first time that he killed his victim in self-defense. Finding no abuse of discretion in the trial court's denial of that motion, we affirm.

This case stems from the shooting death of David Jones on April 11, 2000. The evidence, as adduced from the factual proffers made in the plea colloquies of the various perpetrators who pled guilty, is that the appellant entered into an agreement with Michael Weathington, Jose Sweeny, and Todd Morris to rob Jones in the vicinity of 60th and Blane Streets, Northeast. Appellant agreed with the others to approach Jones and demand money. After an initial encounter was aborted, they saw Jones again, and appellant approached him. At some point both men began to fire at each other: Jones died near the scene, and the appellant was hospitalized for his wound. The appellant now contends that by the time he approached Jones, he had resolved in his mind not to rob him. He claims that he approached Jones solely for the purpose of recovering money from Debbie, a woman standing next to Jones. He contends that Jones shot first and that he shot Jones only in self-defense.

In order to succeed on a motion to withdraw a guilty plea, a defendant must establish one of two separate and independent grounds: either that there was a fatal defect in the plea colloquy, or that justice demands withdrawal under the circumstances. *See Pierce v. United States,* 705 A.2d 1086, 1089 (D.C.1997) (citations omitted). While motions to withdraw a guilty plea which are made after sentencing are subject to the "manifest injustice" standard of 32(e) of the Superior Court Criminal Rules, *Morrison v. United States,* 579 A.2d 686, 689 (D.C.1990) (quoting *Carmichael v. United States,* 479 A.2d 325, 327 (D.C.1984)), a motion to withdraw a guilty plea made before sentencing is regarded more leniently and is given favorable consideration "if for any reason the granting of the privilege seems fair and just." *Springs v. United States,* 614 A.2d 1, 4 (D.C.1992) (quoting *Gooding v.*

1. Appellant was charged with conspiracy to commit armed robbery, attempt to commit robbery while armed, first-degree murder while armed, felony murder, first-degree murder while armed (premeditated), possession of a firearm during a crime of violence, and carrying a pistol without a license.

*United States,* 529 A.2d 301, 306 (D.C. 1987)).[2]

 In this case, since the original motion to withdraw the plea was made before sentencing, the "fair and just" standard applies. Three factors are relevant to this inquiry: (1) whether the defendant has asserted his legal innocence; (2) the length of delay between entry of the plea and expression of the desire to withdraw it; and (3) whether the defendant had the full benefit of competent counsel at all relevant times. *See Pierce,* 705 A.2d at 1092 (citing *Gooding,* 529 A.2d at 306–307). "[N]one of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case." *Springs,* 614 A.2d at 4 (quoting *Gooding,* 529 A.2d at 306). The court is also allowed to consider other factors, as necessary on the facts of the individual case, in considering whether it would be fair and just to allow the defendant to withdraw his plea. *See id*; *Bennett v. United States,* 726 A.2d 156, 166 (D.C.1999).

 "Withdrawal of a plea is not a matter of right, and the determination of whether the defendant has met the 'fair and just' standard for withdrawing the guilty plea is left to the trial court's sound discretion." *Binion v. United States,* 658 A.2d 187, 191 (D.C.1995) (citations omitted); *Bennett,* 726 A.2d at 166. The trial court's decision will not be reversed unless it is shown that this discretion has been abused. *See id.* at 165 (citations omitted). A review of the record analyzed in conjunction with this court's decisional law leads us to conclude that the trial court acted within its discretion in denying appellant's petition to withdraw his guilty plea.

### A. Assertion of Legal Innocence

 Our first inquiry is whether the appellant has asserted a credible claim of legal innocence. Although a claim of innocence is an "important" factor in the court's determination of whether it will allow a defendant to withdraw a guilty plea, this claim is "not dispositive." *Springs,* 614 A.2d at 5. When a criminal defendant moves to withdraw his guilty plea, he must "set forth some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability." *Id.* (citations omitted); *see also Pierce,* 705 A.2d at 1093. The mere assertion of a defense is insufficient to allow withdrawal of a plea, and withdrawal will not be permitted where the defense, even if legally cognizable, is "unsupported by any other evidence." *See Bennett,* 726 A.2d at 167. In deciding whether a credible claim of innocence has been made, such an assertion is to be weighed against "the proffer made by the government, appellant's sworn adoption of the facts contained in that proffer, and appellant's own sworn admissions made at the time the pleas were entered." *Maske v. United States,* 785 A.2d 687, 695 (D.C.2001) (quoting *Springs,* 614 A.2d at 6). The judge is permitted to compare the two conflicting versions of events, and to credit one over the other. *See Bennett,* 726 A.2d at 167–68; *Austin v. United States,* 356 A.2d 648, 649 (D.C.1976). As with other credibility determinations entrusted to the trial court, we defer to the trial judge's assessment. *See In re A.L.,* 839 A.2d 678, 679 (D.C.

---

2. The procedure for accepting a guilty plea is established in Superior Court Criminal Rule 11. Appellant does not contend that there were any defects in the plea colloquy, and our review of the record reveals no such defects.

Review of the issue on appeal is therefore narrowed as to whether it would be "fair and just" on the facts of this case to allow him to withdraw the plea.

2003) (citing *In re T.M.*, 577 A.2d 1149, 1151 (D.C.1990)).

In this case, there was a very strong factual proffer made by the government,[3] and the appellant's sworn adoption of this proffer also clearly established his guilt in the killing of David Jones.[4] The trial judge did not clearly err when she discredited the appellant's post-plea version of events, which is so greatly at odds with his earlier ratification of the government's strong factual proffer and his own description to the court of the armed robbery and shooting.[5] *See, e.g., Austin*, 356 A.2d at 649 (noting a "clear statement by appellant" at his plea supporting his guilt);

*Springs*, 614 A.2d at 6 (allowing the judge to reject the claim of innocence because "[t]he government's proffer together with appellant's sworn statements made at the time of the pleas provided a factual context which overwhelms appellant's lame and unsupported claims of non-culpability"); *Binion*, 658 A.2d at 193 ("The government's strong proffer also undercuts appellant's post-plea claim of innocence.") (citation omitted).

## B. Length of Time

 Motions to withdraw that are made promptly are "regarded with partic-

---

3. [Appellant] and codefendants Todd Morris, Michael Weathington and Jose Sweeny conspired together in an armed robbery of David Jones on April 11, 2000. During execution of the robbery [appellant] pulled out a gun and fatally shot Jones. Morris had instructed [appellant] to bring guns to the neighborhood of 60th and Blane Street. [Appellant] and Weathington brought three guns with them. They met up with Sweeny and invited him to participate in the robbery. They explained to Sweeny that Morris was going to purchase drugs from Jones. For some reason, the robbery did not occur as initially planned, however. Morris instructed [appellant] to follow Jones and they found him standing in front of 105 60th Street NE. [Appellant] approached Jones and demanded all his money. There was an exchange of gunfire between [appellant] and Jones. Two witnesses would testify that [appellant] fired at Jones and Jones fired back. One witness would testify that [appellant] continued to shoot at Jones after he was down on his back. Jones fired only one shot at [appellant], hitting him in the abdomen. Jones ran about a block away and died. Meanwhile, Weathington and Sweeny fled the scene. Two guns were recovered in their automobile. The third gun that was fired by [appellant] was found about ten feet away from him under a couch where [appellant] was arrested.

4. [Morris told] me to bring the guns outside. Meet him around the block. It was me and Mike [Weathington] go to meet him around the block. The dude leave, David Jones, he leave, we leave. That's when I happened to see him again on 60th Street and I told him to give me the money. He ain't give me the money, so I shot him. He shot me, gunfire erupt.

5. The trial court determined in the alternative that, on the facts of this case, even if appellant were believed he would not have a cognizable claim of self-defense because he never expressed to his co-conspirators that he was withdrawing from the conspiracy. Relying on *Gearhart v. United States*, the appellant argues that "the [trial] Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." 106 U.S.App. D.C. 270, 273, 272 F.2d 499, 502 (1959). *But see Bennett*, 726 A.2d at 168 (noting that "the *Gearhart* court cited no authority for the observation quoted above, and the principle stated is best characterized as obiter dictum"). Because we do not place dispositive significance on the trial court's alternative ruling, we have no cause to decide the issue in this case. Our jurisprudence, cited in the text, entrusts to the trial court an initial assessment of the appellant's belated assertion of innocence in light of his earlier adoption of the damning government proffer and his own incriminating statements during the plea colloquy and in subsequent correspondence to the court. *Cf. Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity.")

ular favor" because "a swift change of heart is itself a strong indication that the plea was entered in haste and confusion." *Gooding,* 529 A.2d at 307 (citing *United States v. Barker,* 168 U.S.App.D.C. 312, 326, 514 F.2d 208, 222 (1975)). The length of time is measured as between the date of the plea and "the time the defendant sought to withdraw the plea." *Pierce,* 705 A.2d at 1094 (quoting *Springs,* 614 A.2d at 4). In the present case, the appellant pled guilty on September 4, and the first record evidence of the appellant expressing a desire to withdraw his plea is his handwritten letter which Judge Retchin received on October 19. In his testimony in support of the motion to withdraw, the appellant stated that he mailed the letter much earlier, and places the date of mailing alternatively during the first week of October (four weeks after the plea), or about three weeks after the plea.[6] We have repeatedly held that a delay of similar length does not weigh in favor of allowing a defendant to withdraw his guilty plea. *See Bennett,* 726 A.2d at 169 (three-week delay); *Springs,* 614 A.2d at 8 (three weeks); *Byrd v. United States,* 801 A.2d 28, 33 (D.C.2002) (twenty-six day delay); *see also Maske,* 785 A.2d at 695 ("more than two months"); *Pierce,* 705 A.2d at 1094 (eleven weeks).

The appellant's claim that he promptly moved to withdraw his plea is further undercut by his subsequent actions and the testimony of Mr. McCarthy, his attorney at the time the plea was entered. The record shows, and the appellant has not disputed, that he wrote the judge on October 17, expressing remorse for his actions and admitting that he "must pay for the part I played in taking David Jones['s] life." Additionally, in his written state-

ment of October 31, made as part of the pre-sentencing investigation after he expressed a desire to withdraw his guilty plea, the appellant wrote that he "agree[d] with the statement of facts which the prosecutor read in court at the time of my guilty plea," and that he "wish[ed] to accept full responsibility for my own actions in committing this crime." Further, McCarthy, whom the court found "extremely credible on every issue about which he testified," related that when he met with the appellant after receiving a copy of his October 19 letter to the judge, his then-client told him to "forget the letter withdrawing the plea, I want to stick with what happened." This should be noted because, in addition to the initial three-week delay by the appellant in notifying the court of his desire to withdraw the plea, "his subsequent vacillation weighs against him in the analysis of the delay factor." *Springs,* 614 A.2d at 8.

The trial judge, therefore, did not abuse her discretion in finding that the length of time between the appellant's guilty plea and his subsequent decision to withdraw that plea did not weigh in favor of allowing him to withdraw that plea.

### C. Effective Assistance of Counsel

 In determining whether it would be fair and just to allow a defendant to withdraw his guilty plea, the court considers whether the defendant "had the full benefit of competent counsel at all relevant times." *Pierce,* 705 A.2d at 1092 (citing *Gooding,* 529 A.2d at 306–307). The appellant has the burden of establishing that the actions or advice of counsel "fell short of the range of competence demanded of

---

**6.** The court takes judicial notice that in early October 2001, several letters containing a deadly chemical agent, anthrax, were mailed to various public officials in the District of Columbia, resulting in delayed mail delivery at that time. For this reason, we give appellant the benefit of his assertion that he mailed the letter about three weeks after his plea was entered.

attorneys in criminal cases and motivated his plea." *Williams v. United States,* 595 A.2d 1003, 1006 (D.C.1991) (citations omitted). The trial court rejected appellant's claim that the fact that his former counsel did not prepare the appellant to testify showed incompetence. Counsel's decision is indeed understandable given that the appellant had decided to plead guilty a few weeks before the case was to go to trial, and had not communicated his intent to renege on the plea deal. Additionally, McCarthy's frank advice as to the merits of accepting the offered plea, in light of the evidence and the number of additional charges pending against appellant, see *supra,* note 1, cannot be considered ineffective, especially given that the appellant himself admitted that McCarthy "always told me that I'll try the case if you want me to, Jayvon." *See Schnautz v. Beto,* 416 F.2d 214, 215 (5th Cir.1969) ("If the best professional advice that a lawyer can give is to enter a guilty plea and the accused relies on his lawyer's advice, the accused cannot later successfully urge the plea was involuntary on the basis of counsel coercion").

The trial judge, therefore, did not abuse her discretion in finding that the appellant had received the full benefit of counsel at all relevant times.

### D. Other Considerations

In addition to the above three factors, the appellant argued to the trial judge that she should consider his lack of education and the fact that "he suffered from the after-effects of what appears to be a fairly serious hospitalization." The court found that the appellant's sole malady was a "*de minimis* stomach ailment," and the appellant has never asserted that he suffered from anything other than slight discomfort. Further, at the plea colloquy appellant informed the court that he had recently been hospitalized for internal bleeding, was on medication "for the acid in [his] stomach," that it "don't make me feel no way," and that his head was clear at the time. The judge therefore acted within her discretion in finding that these ailments did not require allowing the defendant's motion. *See Bennett,* 726 A.2d at 170–71 (finding that the trial judge did not abuse discretion in denying the appellant's motion to withdraw his guilty plea, even though the appellant was under the effect of prescribed narcotic and psychotropic drugs at the time of the plea, because the appellant "had an awareness of the significance of the decision he was making").

For the above reasons, we conclude that the trial judge acted within her discretion in concluding that neither fairness nor justice required the defendant's guilty plea to be withdrawn.

*Affirmed.*

