**Joseph Michael MASKE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 99–CO–692.**

District of Columbia Court of Appeals.

Submitted June 21, 2001.

Decided Nov. 21, 2001.

Francis T. Lacey, Rockville, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Frederick W. Yette, and Christopher S. Rhee, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, Associate Judge, and BELSON * and NEBEKER, Senior Judges.

TERRY, Associate Judge:

This is an appeal from an order denying a pre-sentence motion to withdraw a guilty plea. We find no error in either the plea proceeding itself or the denial of the motion to withdraw the plea, and accordingly we affirm the trial court's order.

I

Appellant was charged in an eighteen-count indictment with conspiracy to commit robbery, armed robbery, attempted armed robbery, first-degree felony murder while armed (two counts), first-degree pre-

---

* Senior Judge Gallagher was a member of the division when this case was submitted. Senior Judge Belson was later selected by lot to replace him.

meditated murder while armed (two counts), kidnapping while armed, assault with intent to kill while armed, assault with a dangerous weapon, and related weapons offenses. A few weeks after the indictment was returned, the government filed a notice of intent to seek a sentence of life imprisonment without parole ("life papers"). *See* D.C.Code § 22–2404(a) (1996).

## A. *The Plea Hearing*

On the morning of the scheduled trial date, just before the trial was about to begin, the parties notified the court that they had reached a plea agreement. Defense counsel told the court that appellant had agreed to plead guilty to three counts: first-degree felony murder while armed, based on the kidnapping and fatal shooting of Arnita Turner; second-degree murder while armed, for the fatal shooting and stabbing of Carl Johnson; and assault with a dangerous weapon, based on the shooting of Juanita Turner. The government in return agreed to dismiss the remaining charges and to withdraw its previously-filed life papers.

The trial judge then undertook a thorough inquiry pursuant to Rule 11 of the Superior Court Rules of Criminal Procedure. First, the judge explained to appellant:

> This is going to take us a fair amount of time. I am going to ask you a lot of questions. Depending on how you answer the questions, that will determine whether I accept your plea or not, but I need to be sure that you understand exactly what you are doing, you understand the consequences of what you are doing, and you are making your decision to do it freely and voluntarily, not because of pressure from [the prosecutor] or [defense counsel] or anybody, least of all me.

To this end the judge instructed appellant to tell him "if there is anything you do not understand . . . ."

The judge began the Rule 11 inquiry by confirming that appellant was not under the influence of alcohol or drugs. The judge also clarified that defense counsel had explained to appellant his reasons for having filed a notice of intention to raise an insanity defense, *see* D.C.Code § 24–301(j) (1996), and later withdrawing the notice. The discussion continued:

> THE COURT: . . . Have you ever suffered from mental illness that affected your ability to think clearly?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And are you thinking clearly today?
>
> THE DEFENDANT: Yes, sir.

The judge then explained to appellant that by pleading guilty to the three counts, he would be waiving his constitutional right to a trial and all the rights that a trial provides.

Having clarified the potential sentence for the counts covered by the plea agreement, the judge went on to ensure that appellant had not been improperly induced to plead guilty, and that he had received the assistance of competent legal counsel in making his decision:

> THE COURT: . . . I asked you whether anybody . . . had made you any promises of any kind that had caused you to plead guilty, in other words, influenced your decision to plead guilty, other than the promises that we have already talked about, that are specifically included in the plea agreement? . . .
>
> THE DEFENDANT: No, sir.
>
> THE COURT: . . . Has anyone threatened you or forced you or put on any pressure on you to plead guilty?
>
> THE DEFENDANT: No, sir. . . .

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: What do you mean when you say that? . . .

THE DEFENDANT: I am saying I am guilty of the charges I am accused of.

THE COURT: And who made the decision . . . to plead guilty?

THE DEFENDANT: Me.

THE COURT: All right. Are you satisfied with . . . your lawyer?

THE DEFENDANT: Yes.

THE COURT: Completely?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time talk to him about your case and about your decision to plead guilty?

THE DEFENDANT: Yes.

THE COURT: You sure?

THE DEFENDANT: Yes.

The judge then made a final effort to establish that appellant understood the consequences of entering a guilty plea:

THE COURT: You know why I am asking you all these questions?

THE DEFENDANT: Yes.

THE COURT: Why do you think?

THE DEFENDANT: In case I want to withdraw my plea.

THE COURT: That's part of it. That's right.

I can't even accept your plea in the first place unless I am satisfied that you understand everything there is to know about your decision to plead guilty, that you are entering your plea knowingly and voluntarily, with a full understanding of what the consequences are. That's the main reason.

But the second reason is . . . [that] once I accept your plea, you can't have it back. If I accept your plea because I am satisfied that we have been over all of this properly, then if you don't like the sentence I give you, or if you for some other reason write me and say I want my plea back, my lawyer didn't explain something to me, or I didn't have enough time, or any reason, I am going to say, wait a minute, Mr. Maske. We talked about all that on October the [7th]. And I may even play the tape for you, or let you read it from today, and therefore I am not going to grant your motion.

So I want you to be sure as I go through it today that this is the decision you are prepared to make.

THE DEFENDANT: Yes, sir.

Following this admonition, the judge directed the government to make a proffer of the evidence underlying the three counts covered by the plea agreement. The judge told appellant to "listen carefully," because he would have an opportunity to "make any additions or changes or corrections" to the government's summary of the evidence.

### B. *The Government's Proffer*

On November 20, 1995, Carl Johnson and Arnita Turner, who were romantically involved with each other, picked up Juanita Turner, Arnita's twin sister and appellant's girl friend, and drove to meet appellant. Shortly before this meeting, appellant had been with a group of people, including his cousin, Aaron Crowder, and another man named Joseph Simms. At appellant's request, Mr. Simms gave him a gun so that he could rob Mr. Johnson.

When appellant met Johnson and the Turner sisters a short while later, appellant walked with Johnson through an apartment building to a deserted area. There he shot Mr. Johnson twice and stabbed him seven times in the neck, then

returned to the car where Juanita and Arnita Turner were waiting. Arnita Turner, after asking where Johnson was, tried to run away, but appellant instructed Simms and Crowder to put her back in the car. As they did so, appellant shot Arnita in the leg.

Crowder then drove the car to a deserted playground, where appellant fatally shot Arnita Turner in the head. After Simms and Crowder got out of the car, appellant proceeded to shoot Juanita Turner, wounding her in the arm and the jaw. Appellant then removed jewelry from the bodies of the sisters while Juanita feigned death.

Appellant left the car and caught up with Simms and Crowder. Appellant placed the gun against Mr. Simms' head and pulled the trigger, but when the gun failed to fire, the men fought and then went their separate ways. Later that day appellant fled to New Jersey.

The government was prepared to present testimony from three eyewitnesses, each of whom identified appellant as the shooter: Simms, Crowder, and Juanita Turner, who had survived her injuries. The government also had ballistic test results which showed that the bullets found in Juanita Turner's jaw matched those recovered from Carl Johnson's head.

### C. *The Guilty Plea*

Appellant's only stated concern regarding the government's proffer was that it minimized Simms' and Crowder's roles in the series of events. Nevertheless, the judge proceeded to confirm the proffer with appellant:

> THE COURT: Did you on November 20, 1995, force Arnita Turner and Juanita Turner into a car at gunpoint?
>
> THE DEFENDANT: Yes, sir.

THE COURT: When you did that, had you already shot and killed Carl Johnson?

THE DEFENDANT: No, sir.

THE COURT: Did you shoot and kill Carl Johnson?

THE DEFENDANT: No, sir.

THE COURT: Who did?

THE DEFENDANT: (A pause) I shot him.

THE COURT: Why did you say no?

THE DEFENDANT: I shot him.

THE COURT: You will have to answer my other question. I don't want there to be any question about it.

Why did you tell me no?

THE DEFENDANT: (A pause)

THE COURT: When you told me no, was that true?

THE DEFENDANT: I shot him, Your Honor.

THE COURT: Well, then, let me ask you in chronological order. On November 20, 1995, did you shoot and kill Carl Johnson?

THE DEFENDANT: Yes, sir.

THE COURT: In the manner described by the prosecutor?

THE DEFENDANT: Yes, sir.

Appellant pleaded guilty to the three charges, and the judge found that there was a factual basis for the plea.

### D. *Appellant's Motion to Withdraw His Plea*

At the sentencing hearing two months later, appellant told the court that he had not murdered Carl Johnson. The court stopped the hearing, then appointed new counsel and directed him to file a motion to withdraw the guilty plea. He did so, and the government filed an opposition. Appellant himself also sent the court a letter claiming that his former counsel had ig-

nored his statement that he was not responsible for Mr. Johnson's death.

At the hearing on appellant's motion to withdraw his guilty plea, the government called appellant's former counsel, Christopher Swaby of the Public Defender Service, as a witness.[1] Mr. Swaby testified that he had explained the plea agreement to appellant, and that appellant gave no indication that he had not killed Carl Johnson. Mr. Swaby acknowledged that he had told appellant that the court would not accept the plea agreement if he denied killing Johnson, but he said that he also instructed appellant "to tell the truth." Moreover, Mr. Swaby stated, "I would not have allowed him [appellant] to take the plea if he had told me that he had not killed Carl Johnson." [2]

Appellant testified on his own behalf, reiterating the claims he had made in his letter to the judge. He said that he had not killed Carl Johnson, that he had so informed Mr. Swaby before entering the guilty plea, and that he did not realize that he had pleaded guilty to murdering Johnson until shortly before the sentencing hearing.

The prosecutor then offered his theory that appellant showed doubt during the plea hearing about whether he murdered Carl Johnson because he was thinking about implicating his cousin, Aaron Crowder. The basis for this conjecture was that, before initially denying the murder of Mr. Johnson, appellant looked toward the back of the courtroom where several of his family members were seated. The prosecutor surmised that appellant refrained

from blaming Crowder when he saw Crowder's mother—his own aunt—in the courtroom.

The court, crediting Mr. Swaby's testimony over appellant's, denied the motion to withdraw the guilty plea, specifically finding appellant's assertions of innocence to be incredible. The court also stated that the two-month delay in contesting his guilty plea had prejudiced the government and weighed against granting the motion. Finally, after noting that appellant had not made a claim of ineffective assistance of counsel, the court ruled that in any event he had been represented by competent counsel—"a succession of experienced lawyers from the Public Defender Service"— throughout the proceedings up to and including the guilty plea. "Based on all of those factors," the court found as a fact "that Mr. Maske, contrary to his testimony today, but consistent with his testimony [at the plea proceeding], shot and stabbed Carl Johnson to death."

Four weeks later, the court sentenced appellant to thirty years to life on the first-degree murder charge, twenty years to life on the second-degree murder charge, and forty months to ten years on the assault charge. All the sentences were ordered to run consecutively.

## II

Appellant is now attempting to do what the trial court expressly warned him would be precluded by his guilty plea. Despite clear instructions from the court as to the terms and ramifications of the plea agree-

1. The court ruled that appellant had waived any right to invoke the attorney-client privilege as to Mr. Swaby when he filed the motion to withdraw his guilty plea and sent the letter to the judge. That ruling is not challenged on appeal.

2. Mr. Swaby also testified that while appellant "expressed some confusion about what he had pled to," at no time did he tell him that he was not responsible for Carl Johnson's death. Mr. Swaby withdrew from representing appellant only when it became evident that appellant blamed him for the guilty plea.

ment, appellant now asserts that he should be allowed to withdraw his plea. He relies on his moment of hesitation during the plea proceedings, when the court asked him whether he had killed Carl Johnson, as a basis for arguing that the court erred both in accepting the plea and then in refusing to let him withdraw it. He maintains that, given his initial denial of responsibility for Mr. Johnson's death, either there was a fatal defect in the Rule 11 proceedings or "justice demands withdrawal" of the plea. These broad assertions are plainly refuted by the record.

■ As this court has often and consistently held, "[t]he determination of whether to allow withdrawal of a guilty plea is left to the sound discretion of the trial court, and reversal will be required only upon a showing of abuse of discretion." *Springs v. United States,* 614 A.2d 1, 4 (D.C.1992) (citation omitted). Under Rule 32(e) of the Superior Court Rules of Criminal Procedure, "[a] defendant may successfully move to withdraw a guilty plea ... by establishing that either (1) there was a fatal defect in the Rule 11 proceeding when the guilty plea was taken; or (2) justice demands withdrawal under the circumstances of the case." *Pierce v. United States,* 705 A.2d 1086, 1089 (D.C.1997) (citation omitted), *cert. denied,* 525 U.S. 1087, 119 S.Ct. 838, 142 L.Ed.2d 693 (1999); *accord, e.g., Pettiford v. United States,* 700 A.2d 207, 216 (D.C.1997). Applying these principles, we hold that appellant has failed to show that the trial court abused

its discretion in denying his motion to withdraw the guilty plea.

### A.  *Adequacy of the Rule 11 Inquiry*

■ Appellant contends that there was a fatal defect in the plea proceeding, namely, that his initial denial of murdering Carl Johnson rendered his subsequent guilty plea invalid.[3] We disagree. As the government states, the court established a more than adequate factual basis for appellant's plea.[4] The prosecutor at the hearing made a clear and concise proffer, to which the court instructed appellant to "listen carefully." Appellant was also offered the opportunity to correct any aspect of the proffer that he believed to be inaccurate.[5] Overall, the court went to great lengths to ensure that appellant understood the import of its acceptance of the guilty plea.

The only basis for appellant's present claim of abuse of discretion is that he twice denied killing Carl Johnson, before reversing himself and admitting that he had indeed killed Johnson. Three separate times appellant stated that he had shot Mr. Johnson, and he specifically affirmed, in response to a question from the court, that he had killed Johnson "in the manner described by the prosecutor." It was only at this point that the court accepted his guilty plea, after ruling that "there [was] a factual basis" for it.

Appellant's claim is similar to that made (and rejected) in *Edwards v. United States,* 766 A.2d 981 (D.C.2001). Edwards,

---

3. Appellant did not raise this claim below, instead basing his motion to withdraw his guilty plea solely on the principle that it would be "fair and just" to let him do so. *See Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *see also, e.g., Gooding v. United States,* 529 A.2d 301 (D.C.1987).

4. Super. Ct.Crim. R. 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

5. Appellant's only objection to the proffer was that it understated the roles of Simms and Crowder in the series of crimes.

like appellant, initially claimed innocence as to one count covered by the plea agreement, but then acknowledged his guilt of the disputed offense. After sentencing, Edwards moved unsuccessfully to withdraw his guilty plea. This court affirmed the denial of that motion, noting that the trial court "did not rush in its inquiry about the factual basis for the plea [but] took great pains to ensure that Edwards clearly understood what rights he was giving up by entering a plea." *Id.* at 988. The trial court in the case at bar also "took great pains to ensure" that appellant understood the terms of the plea agreement, as well as offering him plenty of opportunity to change his mind about pleading guilty if he chose to do so. Given the thorough and painstaking efforts by the trial court to make sure that appellant's rights were protected, we reject—as we did in *Edwards*—appellant's claim that there was a fatal defect in the Rule 11 plea proceeding.[6]

B. *Withdrawal in the Interest of Justice*

██ In the alternative, appellant asserts that the trial court erred in not allowing him to withdraw his guilty plea in the interest of justice. As we held in *Pierce*, a defendant may also "withdraw a guilty plea, under the second prong of Rule 32(e), if [he] establishes 'that justice demands withdrawal under the circumstances of the particular case.'" *Pierce*, 705 A.2d at 1092 (citation omitted). This court has estab-

lished that three factors, in particular, should be considered in determining whether "justice demands withdrawal":

> (1) whether the defendant has asserted his legal innocence, (2) the length of delay between entry of the guilty plea and the expression of the desire to withdraw it, and (3) whether the defendant has had the full benefit of competent counsel at all relevant times.

*Id.* (citation omitted).[7]

1. *Assertion of Legal Innocence*

██ While appellant has said he was innocent of Carl Johnson's death, more than a *pro forma* claim of innocence is required to justify withdrawing a guilty plea. We have made clear that a "movant must set forth some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability." *Springs*, 614 A.2d at 5 (citations omitted). Indeed, "if the mere assertion of a legally cognizable defense were a sufficient condition for withdrawal, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim, rather than a grave and solemn act ... accepted only with care and discernment." *Bennett v. United States*, 726 A.2d 156, 167 (D.C.1999) (citations and internal quotation marks omitted).

In determining whether an assertion of innocence is sufficient to merit withdrawal of a guilty plea, this court has balanced

---

6. Indeed, this is an even stronger case than *Edwards*. First, Edwards sought to rescind the entire plea agreement, not just one count. *Edwards*, 766 A.2d at 983–984. Second, there was evidence that Edwards had suffered a brain injury and that his I.Q. placed him in the bottom five percent of the population. *Id.* at 985. (One judge dissented for this reason, concluding that a competency hearing should have been held before the motion to withdraw the guilty plea was granted. *Id.* at 990–992.) Finally, Edwards' trial counsel, who he

claimed was ineffective, subsequently pleaded guilty to criminal fraud in connection with another matter. *Id.* at 985 n. 9. Despite these additional factors, we nevertheless rejected Edwards' assertions that Rule 11 had been violated.

7. In the trial court appellant did not, nor does he now, suggest any other factors which might be considered in support of his motion to withdraw his guilty plea.

"the proffer made by the government, appellant's sworn adoption of the facts contained in that proffer, and appellant's own sworn admissions made at the time the pleas were entered." *Springs*, 614 A.2d at 6. At the plea hearing, appellant, after initially denying the murder of Carl Johnson, went on to admit, no less than four times, that he had killed Mr. Johnson. Moreover, while appellant asserts his innocence, he has made no attempt to offer either a defense or evidence to suggest that someone else committed the crime.

The government, on the other hand, presented a succinct proffer. According to the government, Mr. Simms and Mr. Crowder saw appellant lead Mr. Johnson to the deserted area where his body was later found. Both men heard gunfire from that area, after which appellant returned to the car. Ballistics tests indicated that Carl Johnson and Juanita Turner were struck with bullets fired from the same gun. Thus there was strong evidence proffered that just as appellant shot Juanita Turner, an allegation that he has never challenged, he also shot and killed Carl Johnson. Appellant has offered nothing to refute this detailed factual proffer.

### 2. Delay in Asserting Innocence

■ " 'A swift change of heart is itself a strong indication that the plea was entered in haste and confusion'.... Withdrawal motions promptly made are regarded with 'particular favor.' " *Gooding, supra* note 3, 529 A.2d at 307 (citations omitted). Appellant's assertion of innocence was far from swift. After admitting at the plea hearing that he had shot and killed Carl Johnson "in the manner described by the prosecutor," he waited until the com-

mencement of the sentencing hearing, more than two months later, before disclaiming responsibility for Mr. Johnson's death. This court has held that a delay as short as three weeks in moving to withdraw a guilty plea weighs against granting the motion. *See Bennett*, 726 A.2d at 169–170 ("the trial judge did not err in determining that a three-week delay, even in the absence of prejudice to the government, did not weigh in favor of granting Bennett's motion to withdraw his plea"); *accord, Springs*, 614 A.2d at 7–8 (three-week delay); *Pierce*, 705 A.2d at 1093–1094 (eleven-week delay). Given these and similar precedents, we hold that the two-month delay in this case provides further support for the trial court's denial of appellant's motion.[8]

### 3. Effective Assistance of Counsel

Finally, the trial court determined that appellant's attorney provided him with effective assistance at all relevant times. Appellant now claims that his counsel ignored his statements that he did not murder Carl Johnson. We conclude that the trial court acted well within its discretion in accepting Mr. Swaby's account of the attorney-client relationship. As the court explained, there was no way that appellant could "have left the plea [hearing] on October 7th without realizing that he had pled guilty to murdering Carl Johnson." Appellant offers no other basis for overturning the court's finding that he had competent counsel.

We are satisfied that the trial court did not err when it ruled that none of the three established factors supported appellant's motion to withdraw his guilty plea in

8. Appellant asserted below that he did not profess his innocence before the sentencing hearing because he was confused about the crimes to which he had actually pleaded guilty. The trial court found this assertion unworthy of belief. Given appellant's repeated, explicit admissions of guilt at the plea proceeding, in response to very clear questions from the court, we discern no error in this finding.

the interest of justice. Appellant, represented by competent counsel, plainly knew that he was pleading guilty to the murder of Carl Johnson; no other conclusion can reasonably be drawn from this record. His belated assertion of innocence, which was not made until the sentencing hearing more than two months later, not only was unsubstantiated but also was refuted by the record of the plea proceeding. The trial court did not err in denying appellant's motion to withdraw the plea because justice did not demand withdrawal.

### III

Appellant has failed to show either that there was a fatal defect in the Rule 11 proceeding or that justice demands withdrawal of his guilty plea. The order denying his motion to withdraw the plea is therefore

*Affirmed.*