*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CF-730

MARK LONG, APPELLANT,

v.

UNITED STATES, APPELLEE.

09/14/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(CF2-15615-14)

(Hon. Anita Josey-Herring, Trial Judge)

(Argued March 23, 2017                           Decided September 14, 2017)

*Charles E. Wagner* for appellant.

*Elizabeth Gabriel*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant United States Attorneys, were on the brief, for the government.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and FISHER and EASTERLY, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: This case stems from the government's prosecution of appellant Mark Long for his alleged role in a conspiracy to hide excessive campaign contributions to a mayoral campaign during the 2010 District of Columbia mayoral election. Appellant pleaded guilty to one count of

conspiracy to defraud the District of Columbia and the District of Columbia's Office of Campaign Finance ("OCF"), in violation of D.C. Code § 22-1805a (a)(1) (2013 Supp.). On appeal, appellant argues that the trial court abused its discretion in denying his pre-sentence motion to withdraw his guilty plea. He claims that the Super. Ct. Crim. R. 11 ("Rule 11") inquiry was defective because the trial court failed to inform him of the correct maximum sentence or confirm that the factual proffer was sufficient. He also argues that the trial court should have allowed him to withdraw his guilty plea in the interest of justice. We affirm the trial court's decision for the reasons that we discuss below.

## I. Factual Background

### A. *The Plea Deal*

Appellant agreed to plead guilty to one count of conspiracy to defraud the District and OCF in exchange for his cooperation with the government in its continued investigation of the mayoral campaign. The plea offer letter informed appellant that this charge carried a maximum sentence of five years imprisonment, a fine of $10,000, and a maximum of three years of supervised release.

Appellant agreed to plead guilty to allegations that "[f]rom at least in or about May 2010 through in or about October 2010" appellant conspired with two others, Jeffrey E. Thompson and Eugenia Harris, to defraud the District and OCF "by funding and concealing and by attempting to fund and conceal contributions to MAYORAL CAMPAIGN A for purposes of electing MAYORAL CANDIDATE A in excess of those permitted," "thereby obstruct[ing] and imped[ing] the due administration of the campaign finance laws." *See* District of Columbia Campaign Finance Reform and Conflict of Interest Act of 1974, Pub. L. No. 93-376, 88 Stat. 454, *repealed by* D.C. Law 19-124 (2012) ("Campaign Finance Reform Act").[1] Under the Campaign Finance Reform Act, the maximum amount that a person or business may contribute to a mayoral campaign is $2,000.

The complaint alleged two overt acts in furtherance of the conspiracy to support Mayoral Candidate A's campaign through excess, off-the-book

---

[1] The Campaign Finance Reform Act was superseded by the Board of Ethics and Government Accountability Establishment and Comprehensive Ethics Reform Amendment Act of 2011 ("Government Accountability Act"), which was enacted on April 27, 2012. *See* D.C. Law 19-124 (2012). Under the Campaign Finance Reform Act and the Government Accountability Act, the maximum contribution amount to a mayoral campaign is $2,000. *Compare* D.C. Code § 1-1131.01 (repealed 2012) *with* D.C. Code § 1-1163.33 (2014 Supp.).

contributions.[2]  Appellant also signed a Statement of Offense, which explained the conspiracy in greater detail.  The Statement of Offense alleges as the first overt act in furtherance of the conspiracy:

> From in or about May 2010 through in or about September 2010, using funds provided by THOMPSON and his companies to DETAILS [i.e., Details International, Inc., a company owned by Harris], defendant MARK LONG received a salary from DETAILS in his capacity as a consultant to DETAILS to provide services to MAYORAL CAMPAIGN A, which included serving as the official campaign driver for MAYORAL CANDIDATE A.

The Statement of Offense stated that appellant knew that Thompson and Harris intended to conceal from OCF his salary as Mayoral Candidate A's driver as a contribution of services to Mayoral Campaign A.  The Statement of Offense alleges as the second act in furtherance of the conspiracy:

> In or about August 2010, defendant MARK LONG and HARRIS discussed a request from MAYORAL CANDIDATE A to arrange a secret meeting between MAYORAL CANDIDATE A and MAYORAL CANDIDATE C.  Defendant MARK LONG knew from

---

[2]  For background, appellant was a candidate for an At-Large Member position of the Council of the District of Columbia ("D.C. Council") in 2008.  His campaign received financial support in excess of the Campaign Finance Reform Act's statutory limit from Thompson and Harris.  Appellant knew of the limitations that the Act imposed and understood that Thompson and Harris intended to conceal, and did conceal, the excess contributions to his 2008 campaign from OCF's purview.  While appellant's campaign was unsuccessful, around this time, appellant met Mayoral Candidate A.

> his discussions with HARRIS that the purpose of the meeting, as directed by MAYORAL CANDIDATE A, was to attempt to arrange a secret agreement by which MAYORAL CANDIDATE C would drop out of the election for Mayor of the District of Columbia and endorse MAYORAL CANDIDATE A in exchange for a thing of value.

Appellant secured a residence in Maryland to hold the meeting. The Statement of Offense stated that appellant knew that Mayoral Candidate A intended to conceal from OCF "any payment of a thing of value to [Mayoral Candidate C] in exchange for dropping out . . . and endorsing [Mayoral Candidate A]."

### B. Trial Court Proceedings

On September 5, 2014, appellant pleaded guilty to one count of conspiracy to defraud before the trial court. Before appellant pleaded guilty, the trial court conducted a Rule 11 inquiry to ensure that appellant was knowingly and voluntarily pleading guilty, and to ensure there was a factual basis for the plea. First, the government recited the conspiracy charge appellant would plead guilty to, including the maximum five year prison term, in exchange for his cooperation. The court asked appellant whether that was his "understanding" of the offer, to which appellant answered, "Yes." Next, the trial court informed appellant of his right to go to trial and related rights that he was giving up by pleading guilty and

asked appellant if he understood, which appellant acknowledged that he did. The court also asked appellant whether he was "under the influence of drugs or alcohol or anything that would affect [his] ability to know what [he was] doing here today," which appellant answered "[n]o," and whether he was satisfied with his attorney, Mr. William Martin,[3] which appellant answered "[y]es." Finally, the trial court asked the government to recite the factual basis for the plea as stated in the Statement of Offense. Following the proffer, the trial court asked appellant whether the proffer was "correct or incorrect," to which appellant answered that it was "[c]orrect." Appellant thereafter pleaded guilty to one count of conspiracy, and the trial court found that appellant "knowingly and intelligently waived his rights to trial and that there [was] a factual basis for his plea."

On March 2, 2016, nearly eighteen months after appellant pleaded guilty but before sentencing, appellant sought to withdraw his guilty plea, with assistance from new counsel, Charles E. Wagner. Appellant argued that (1) he was factually innocent of conspiracy because he did not contribute money to Mayoral Campaign A directly and did not assist Thompson and Harris in concealing his salary; (2) even assuming he had engaged in wrongdoing, the Rule 11 inquiry was defective

---

[3] Mr. Martin was assisted by co-counsel, Ms. Kerry Verdi.

because the maximum penalty under the conspiracy statute under which he was charged was six months, not five years; and (3) he should be allowed to withdraw his guilty plea in the interest of justice because his plea counsel was ineffective for failing to advise him and help him receive similar plea deals as Thompson and Harris, who he claims received better plea deals.[4] The government opposed appellant's motion to withdraw.

On June 3, 2016, the trial court denied appellant's motion to withdraw the guilty plea after considering the pleadings, filed affidavits, and arguments raised by counsel during the hearings.[5] The trial court concluded that, while appellant

---

[4] Thompson ultimately pleaded guilty in federal District Court to one count of conspiracy, *see* D.C. Code § 22-1805a (a)(1); the government agreed that any sentence "will not exceed six months, followed by up to three years of supervised release . . . ." Harris, likewise, pleaded guilty in federal District Court to federal conspiracy, 18 U.S.C. § 371 (1994), federal fraud and false statements, 26 U.S.C. § 7206 (1) (1982), and D.C. conspiracy to make a contribution in the name of another person, D.C. Code § 22-1805a. The count of D.C. conspiracy to make a contribution in the name of another person carried a maximum six months of incarceration. *See* D.C. Code § 1-1107.01 (a) (Repealed 2012).

[5] The trial court held an initial hearing on April 29, 2016, where the parties discussed the arguments raised in appellant's motion to withdraw. The trial court tentatively found that given the "low standard" for the withdrawal of a plea before sentencing, the court was inclined to allow appellant to withdraw his plea. The court agreed to hold its decision in abeyance and gave the parties additional time to file affidavits in favor of their respective positions. Appellant filed a second affidavit, whereas the government filed affidavits from appellant's former attorneys, Mr. Martin and Ms. Verdi.

asserts his innocence, appellant is not contesting that he received a salary to drive Mayoral Candidate A. He also does not challenge the government's assertion that he knew the "goal" of the conspiracy. Further, the court concluded that appellant does not contest his culpability in committing the second overt act in furtherance of the conspiracy by helping to arrange the meeting between Mayoral Candidate A and Mayoral Candidate C. Therefore, the court could not find that appellant was "not complicit in the conspiracy."

The court next concluded that appellant knew that he was pleading to a felony, as stated in the plea offer, "so [the court did not] really understand or see how this assertion that [appellant] was pleading to a misdemeanor has any merit . . . ." The trial court also found that his former counsel Mr. Martin was competent, based on Mr. Martin's submitted affidavit, because he made attempts to secure appellant a misdemeanor plea, but that the government declined to offer appellant a misdemeanor plea.[6] The court further concluded that the fact that

---

[6] Mr. Martin stated in his affidavit that he was aware of Thompson's and Harris's plea deals, that on "numerous occasions" he and Ms. Verdi met with appellant to discuss the plea agreements and possible sentences for both Harris and Thompson, and that he attempted to convince prosecutors to either not charge appellant or charge him only with a misdemeanor. However, Mr. Martin failed to convince the prosecutors. Consequently, he spoke with and advised appellant that it would be better to plead guilty in Superior Court than federal District Court from

(continued…)

Thompson and Harris may have been exposed to less time was not dispositive to appellant's plea as "every circumstance is obviously different." The trial court also weighed against appellant the length of his delay in filing the motion to withdraw and the resulting prejudice to the government. This appeal followed.

## II.     Discussion

### A. Standard of Review

"The determination of whether to allow withdrawal of a guilty plea is left to the sound discretion of the trial court, and reversal will be required only upon a showing of abuse of discretion." *Springs v. United States*, 614 A.2d 1, 4 (D.C. 1992). Under Rule 11 (d), formerly Rule 32 (e),[7] appellant "may successfully move to withdraw a guilty plea [prior to sentencing] . . . by establishing that either (1) there was a fatal defect in the Rule 11 proceeding when the guilty plea was

---

(…continued)
a sentencing guideline standpoint. Mr. Martin stated in his affidavit that appellant agreed with that strategy.

[7] In 2016, Superior Court moved the rule allowing for the withdrawal of guilty pleas from Rule 32 (e) of the Superior Court Rules of Criminal Procedure to Rule 11 (d), to stay "[c]onsistent with the reorganization of the federal rules." Super. Ct. Crim. R. 11, cmt. to 2016 amendments. "No change in practice is intended" with this change in classification. *Id.*

taken; or (2) justice demands withdrawal under the circumstances of the case." *Maske v. United States*, 785 A.2d 687, 693 (D.C. 2001) (citations and internal quotation marks omitted). Moreover, "a motion to withdraw a guilty plea made before sentencing is regarded more leniently and should be given favorable consideration if for any reason the granting of the privilege seems fair and just." *Springs*, *supra,* 614 A.2d at 4 (citation and internal quotation marks omitted). Nevertheless, "withdrawal of a plea is not a matter of right, and the determination of whether the defendant has met the 'fair and just' standard" is left to the discretion of the trial court. *Bennett v. United States*, 726 A.2d 156, 165 (D.C. 1999) (citations and internal quotation marks omitted).

Appellant's arguments on appeal largely mirror the arguments he raised before the trial court. He argues there was a fatal defect in the Rule 11 proceeding because: (1) the trial court failed to inform appellant of the "special proviso" in the conspiracy statute, D.C. Code § 22-1805a (a)(1), which, he claims, limited his maximum imprisonment to six months; and (2) the trial court failed to confirm whether the factual proffer was sufficient to find him guilty of conspiracy. He also argues it is "fair and just" to set aside his guilty plea because: (1) he asserts his actual innocence of the crime alleged; and (2) his counsel was ineffective in failing

to get him a similar plea deal as Thompson's and Harris's plea deals in federal District Court. We address appellant's arguments in turn.[8]

### B. Rule 11 Defect

"Rule 11 obliges the trial court to ensure that any guilty plea represent[s] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Gooding v. United States*, 529 A.2d 301, 305 (D.C. 1987) (citation and internal quotation marks omitted).[9] Moreover, the court has an obligation to inquire whether "there is a factual basis for the plea." *Id.* (citation and internal quotation marks omitted). Consequently, where there is a "[f]ailure by the court to meet these Rule 11 standards," a Rule 11 (d) motion to withdraw a guilty plea

---

[8] Other arguments appellant raises are resolved summarily in footnotes *infra*.

[9] Specifically, Rule 11 (b)(1) states that "the court must address the defendant personally in open court" and "inform the defendant of, and determine that the defendant understands" his rights to a jury trial, the right to representation, the right to confrontation, cross-examination, and to present evidence, the nature of each charge that the defendant is pleading guilty to, and the maximum possible penalty for each charge, among other things. *See id.* (b)(1)(A)-(K). Rule 11(b)(2) requires the court to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Rule 11 (b)(3) requires the court to "determine that there is a factual basis for the plea."

should be granted, "unless it is apparent . . . that any variance [from the Rule 11 inquiry] was purely technical and affects no substantial rights in any way." *Id.*

### 1. Conspiracy Statute

Appellant first argues that the trial court failed to inform him that the conspiracy charge that he pleaded guilty to only had a maximum possible sentence of six months incarceration, rather than the five years that the government stated before the trial court. D.C. Code § 22-1805a (a)(1) states:

> If 2 or more persons conspire *either* to commit a criminal offense or to defraud the District of Columbia or any court or agency thereof in any manner or for any purpose, each shall be fined . . . or imprisoned not more than 5 years, or both, except that if the object of the conspiracy is a criminal offense punishable by less than 5 years, the maximum penalty for the conspiracy shall not exceed the maximum penalty provided for that offense.

(emphasis added). Highlighting certain language from the government's complaint, appellant asserts that what he actually pleaded guilty to was conspiracy to commit the specific offense of providing contributions to Mayoral Campaign A in excess of those permitted under the Campaign Finance Reform Act, in violation

of then-D.C. Code § 1-1107.01 (a) (Repealed 2012),[10] which carried a maximum sentence of six months imprisonment. Relying on the language "except that if the object of the conspiracy is a criminal offense punishable by less than 5 years, the maximum penalty for the conspiracy shall not exceed the maximum penalty provided for that offense," D.C. Code § 22-1805a (a)(1), appellant asserts that, because the specific offense of excess funding carried a penalty lower than five years, the maximum penalty he is exposed to for pleading guilty to conspiracy is six months imprisonment. Appellant misconstrues the statute and the record.

The use of the word "either" in the conspiracy statute envisions two types of conspiracies: (1) a conspiracy to defraud the District of Columbia or any court or agency; and (2) a conspiracy to commit a specific offense. *See Eaglin v. District of Columbia*, 123 A.3d 953, 956 (D.C. 2015) ("If the plain meaning of statutory language is clear and unambiguous and will not produce an absurd result, we will look no further." (citation, internal quotation marks, and brackets omitted)). The statute also contemplates a default five-year maximum prison term for conspiracy,

---

[10] D.C. Code § 1-1107.01 (a) was reenacted as D.C. Code § 1-1163.35 (b) and (c) (2014 Supp.). Under section (b), "any person who violates any of the provisions of [the Government Accountability Act] shall be subject to criminal prosecution and, upon conviction, shall be fined . . . or imprisoned for not longer than 6 months, but not both." Under section (c), "any person who *knowingly* violates any of the provisions of [the Government Accountability Act]" is subject to an enhanced five year sentence. (emphasis added).

except if the charge is a conspiracy to commit a specific offense *and* the specific offense alleged has a lower maximum prison term than five years. *See* D.C. Code § 22-1805a (a)(1). Our interpretation of D.C. Code § 22-1805a (a)(1) is consistent with federal courts' interpretation of the federal conspiracy statute, 18 U.S.C. § 371 (1994),[11] which contains essentially the same language as the District's statute. Federal courts, including the Supreme Court, have long recognized that the federal conspiracy statute encompasses two types of conspiracies: (1) a conspiracy to defraud the United States government or agency; and (2) a conspiracy to commit a specific offense against the United States. *See United States v. Jackson*, 33 F.3d 866, 870 (7th Cir. 1994) ("As the language of the [federal conspiracy] statute indicates, there are two different conspiracies with which a defendant can be

---

[11] The federal conspiracy statute states:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 371.

charged under § 371 — a conspiracy 'to commit any offense against the United States,' *or* a conspiracy 'to defraud the United States.'" (internal quotation marks omitted) (emphasis in original)); *see also Dennis v. United States*, 384 U.S. 855, 863 (1966) (recognizing the two different types of conspiracies under the federal statute).

Turning to the specifics of this case, the plea deal expressly stated that appellant would agree to plead guilty to the criminal complaint of one count of conspiracy, and that this charge carried a maximum sentence of five years imprisonment. The complaint then clearly states that appellant engaged in a conspiracy by unlawfully and knowingly "conspir[ing] *to defraud the District of Columbia and an agency thereof, that is, the OCF* . . . ." (emphasis added). Moreover, during the Rule 11 inquiry, the prosecution recited the maximum penalty of five years that appellant agreed to plead guilty to for the one count of conspiracy and narrated the Statement of Offense, which alleged that appellant "conspire[d] to fraud the District of Columbia and . . . OCF." The trial court inquired whether appellant understood and agreed that he was pleading guilty to one count of felony conspiracy, which carried a maximum sentence of five years of imprisonment, and whether he agreed with the Statement of Offense, and appellant at each stage stated that he agreed with the government's proffer. Accordingly,

appellant was not misinformed of the charge that he was pleading guilty to, or the maximum sentence to which he was exposed. "Rule 11 concerns can be met by statements made in open court in the presence of the accused . . . or statements made to the accused by his counsel." *Malone v. United States*, 729 A.2d 888, 894 (D.C. 1999) (citations and internal quotation marks omitted) (alterations in original).

The fact that the government could have charged appellant with a misdemeanor conspiracy to commit the specific offense of funding and concealing contributions to Mayoral Campaign A in excess of those permitted under the Campaign Finance Reform Act is of no moment. "[T]he decision of whether or not to prosecute, and what charges to file . . . generally rests entirely in the prosecutor's discretion." *District of Columbia v. Economides*, 968 A.2d 1032, 1036 (D.C. 2009) (citations, internal quotation marks, and brackets omitted).

2. Sufficient Factual Basis for Guilty Plea

Appellant next argues that the trial court failed to determine whether there was a sufficient factual basis for the guilty plea. He asserts that the trial court did

not inquire into whether the elements of a conspiracy were met, in particular, whether he knowingly participated in the conspiracy.[12] We disagree.

Criminal conspiracy has three elements that the government must prove: "1) an agreement between two or more people to commit a criminal offense; 2) knowing and voluntary participation in the agreement by the defendant with the intent to commit a criminal objective; and 3) commission in furtherance of the conspiracy of at least one overt act by a co-conspirator during the conspiracy." *McCullough v. United States*, 827 A.2d 48, 58 (D.C. 2003). Here, the Statement of Offense that appellant signed and agreed to, and that the government recited to the trial court for its proffer at the Rule 11 hearing, met all three elements of conspiracy to satisfy the factual basis for the guilty plea. *See Malone*, *supra*, 729 A.2d at 894 ("Rule 11 concerns can be met by statements made in open court in the presence of the accused . . . .") (citation and internal quotation marks omitted).

---

[12] Appellant also asserts that the trial court did not inquire whether his salary constituted a contribution under the Campaign Finance Reform Act or an "expenditure." To the extent the Campaign Finance Reform Act applies to appellant's charged offense, payment by private individuals and companies to furnish services to a mayoral candidate falls within the definition of a "contribution." *See* D.C. Code § 1-1101.01 (6)(A)(iv) (Repealed 2012) (defining "contribution" as including "[t]he payment . . . of compensation for the *personal services of another person* which are rendered to such candidate or committee without charge . . . .") (emphasis added).

The first element of conspiracy is met because the Statement of Offense alleged that appellant worked together with Harris and Thompson to defraud the District of Columbia and OCF by concealing campaign contributions to Mayoral Campaign A. *McCullough*, *supra*, 827 A.2d at 58 (first element requires "an agreement between two or more people to commit a criminal offense"). The second element is also met because the Statement of Offense alleged that appellant "understood" that Thompson and Harris intended to conceal the payments to him as Mayoral Candidate A's driver as campaign contributions. *Id.* (second element requires "knowing and voluntary participation in the agreement"). His act of participating as the campaign driver also satisfies the third element requiring an "overt act." *Id.*

Appellant asserts that his mere knowledge that Thompson and Harris intended to conceal his salary from OCF is insufficient to show that he intended to conspire with them. However, "[a] conspiratorial agreement may be inferred from circumstances that 'include the conduct of defendants in mutually carrying out a common illegal purpose, the nature of the act done, the relationship of the parties and the interests of the alleged conspirators.'" *Castillo-Campos v. United States*, 987 A.2d 476, 483 (D.C. 2010) (citations and original brackets omitted). Further, appellant need not have participated in "every phase of the criminal venture" to be

found guilty of conspiracy, "provided there is assent to contribute to a common enterprise." *United States v. Gardiner*, 463 F.3d 445, 457 (6th Cir. 2006) (citation and internal quotation marks omitted). Here, the Statement of Offense noted that appellant was previously a political candidate himself and aware of campaign finance laws, and that he had previously worked with Thompson and Harris to subvert the District's campaign finance laws during his own campaign. See *supra* note 2. These allegations, coupled with the fact that appellant knew that the payments being made to him as Mayoral Candidate A's driver would not be reported to OCF as campaign contributions, were sufficient for the trial court to infer that appellant knowingly participated in this conspiratorial agreement to hide excess contribution of services to Mayoral Candidate A from OCF.

Moreover, the Statement of Offense alleges a second overt act in furtherance of the conspiracy — the agreement between appellant and Harris to set up a secret meeting between Mayoral Candidate A and Mayoral Candidate C for Mayoral Candidate C to drop out of the race and endorse Mayoral Candidate A "in exchange for a thing of value." Appellant does not dispute that this second act, independently, constitutes an intent to participate in an agreement to hide campaign contributions, which forms a separate basis to find appellant guilty of conspiracy to defraud. *McCullough*, *supra*, 827 A.2d at 58 (conspiracy requires at

least one overt act in furtherance of the conspiracy). There was a sufficient factual basis for the guilty plea.[13] The trial court did not fail to verify the factual proffer, as it noted that appellant had signed the Statement of Offense, which the government had read into the record during the Rule 11 inquiry, and that the court asked appellant if the proffer was "correct or incorrect," to which appellant answered that it was "correct."

### C. Withdrawal in the Interest of Justice

"Under the fair and just standard [for withdrawal from a guilty plea], the court is to consider a number of factors cumulatively; no single factor is controlling." *Pierce v. United States*, 705 A.2d 1086, 1091 (D.C. 1997). However, three factors in particular are considered in determining whether "justice demands withdrawal" of the guilty plea. *Maske*, *supra*, 785 A.2d at 694. "These

---

[13] In his reply brief, appellant also asserts that the factual basis for the plea is defective because the government never mentioned the amount of money appellant contributed in services to Mayoral Campaign A. Appellant never raised this argument before the trial court, so it is waived. *See, e.g.*, *Redman v. United States*, 616 A.2d 336, 338 (D.C. 1992). Even if not waived, the actual amount of money that he contributed in services is not an essential element of the crime of conspiracy to defraud the District and OCF, so long as the intent of the conspiracy was to "defraud" the District and OCF. *See, e.g.*, *United States v. Trie*, 23 F. Supp. 2d 55, 59 (D.D.C. 1998) (explaining the elements of conspiracy to defraud the United States under 18 U.S.C. § 371).

factors include (1) whether the defendant has asserted his legal innocence, (2) the length of delay between entry of the guilty plea and the expression of the desire to withdraw it, and (3) whether the defendant has had the full benefit of competent counsel at all relevant times." *Pierce*, *supra*, 705 A.2d at 1092.

1.  Assertion of Legal Innocence

On appeal, appellant asserts, as he did before the trial court, that he is innocent because he did not personally contribute money to Mayoral Campaign A, assist in the concealment of information from OCF, or assist Thompson and Harris in the filing of false or misleading papers, and that instead he was simply providing services to Mayoral Candidate A.  However, as the trial court noted, and as discussed above, appellant's failure to personally contribute money or assist in the concealment of information does not demonstrate that appellant did not knowingly and voluntarily participate in the agreement to defraud the District and OCF. Notably, appellant has not alleged that he did not *know* that Harris and Thompson would not report his salary as Mayoral Candidate A's driver, or that his participation in this endeavor was a violation of the District's campaign finance laws.  Appellant's purported knowledge of the illegality of Harris's and Thompson's scheme can further be inferred based on appellant's prior experience

with political campaigns in the District of Columbia. Appellant also does not deny his role in setting up the meeting between Mayoral Candidate A and Mayoral Candidate C. The trial court did not abuse its discretion by concluding that appellant did not set forth "some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability." *Maske*, *supra*, 785 A.2d at 694 (citation and internal quotation marks omitted).

But even assuming appellant made out a true assertion of innocence, the trial court was free to discredit appellant's assertion of innocence in light of "the proffer made by the government, appellant's sworn adoption of the facts contained in that proffer, and appellant's own sworn admissions made at the time the plea[] was entered." *White v. United States*, 863 A.2d 839, 842 (D.C. 2004) (citation and internal quotation marks omitted). The trial court found that, because a "conspiracy doesn't necessarily have to be articulated," the court could not "find that [appellant] was not complicit in the conspiracy," and that appellant "underst[ood] what was the goal of the conspiracy."

2. Length of Delay

Appellant filed his motion to withdraw nearly eighteen months after he first entered his guilty plea. The trial court concluded that this extensive delay weighed against allowing him to withdraw his guilty plea. We see no abuse of discretion. "Motions to withdraw that are made promptly are 'regarded with particular favor' because 'a swift change of heart is itself a strong indication that the plea was entered in haste and confusion.'" *Id.* at 843-44 (citations omitted). We have held that a delay of even three weeks weighs against allowing a defendant to withdraw his guilty plea because such a delay does not signal a "swift change of heart." *Id.* at 844 (citing cases where the delay weighing against withdrawal was between three weeks to eleven weeks). Appellant asserts that the eighteen-month delay here was due to the government's need to reschedule the sentencing hearing in order to continue its investigation and appellant's need to procure new counsel. However, appellant's argument that he needed new counsel collapses into his argument that trial counsel was not competent, which we discuss and reject *infra*. *See Gooding*, *supra*, 529 A.2d at 307 (court concerned with whether appellant entered the guilty plea "in haste and confusion" in determining whether the delay was lengthy). We also agree with the trial court that the government was prejudiced by the eighteen-month delay.

3. Competent Counsel

Lastly, "[i]n determining whether it would be fair and just to allow a defendant to withdraw his guilty plea, the court considers whether the defendant had the full benefit of competent counsel at all relevant times." *White*, *supra*, 863 A.2d at 844-45 (citations and internal quotation marks omitted). Appellant "has the burden of establishing that the actions or advice of counsel fell short of the range of competence demanded of attorneys in criminal cases and motivated his plea." *Id.* (citation and internal quotation marks omitted). Appellant's argument that his counsel, Mr. Martin, was ineffective centers around his view that Thompson and Harris received better plea deals. See *supra* note 4. Although it is unclear whether Thompson and Harris even received better plea deals, assuming that they did, as the trial court recognized, "everybody had different circumstances, and the [g]overnment was free to take into account the various considerations they did in making an appropriate offer." We agree.

It is not appropriate to compare the plea deals of appellant's co-conspirators with his own, especially given the fact that their cases were held in federal District Court. *See United States v. Williams*, 827 F.3d 1134, 1165 (D.C. Cir. 2016) (so long as the government has "probable cause" to prosecute and obtained a "valid indictment," it is entitled to "prosecute [appellants] fully" or "to offer lenience").

Reading Mr. Martin's affidavit, see *supra* note 6, which the trial court credited, Mr. Martin affirmed that he was aware of Harris's and Thompson's plea deals, and that he repeatedly asked prosecutors to either drop the charges against appellant or charge him with only a misdemeanor, but that prosecutors refused. Mr. Martin also affirmed that he advised appellant that his sentence, based on the differences between the federal versus the District's sentencing guidelines, would be lower if he was prosecuted in Superior Court, even if it meant pleading to a felony conspiracy charge. Based on these representations, the trial court found that Mr. Martin was competent, and we discern no abuse of discretion with the trial court's assessment. *See, e.g.*, *Clark v. United States*, 136 A.3d 334, 341 (D.C. 2016) ("In evaluating counsel's performance, the reviewing court must indulge a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance." (internal quotation marks and footnote omitted)).[14]

---

[14] Appellant raises a few other claims that we decide summarily. To the extent he claims that the trial court failed to inform him of his sentencing exposure "personally," we conclude that it was harmless on the facts of this case. *See Malone*, *supra*, 729 A.2d at 894. Appellant also claims that he was pressured by his attorney to enter into the guilty plea or "face new legal fees." But at the plea hearing the trial court asked appellant whether he was voluntarily entering into the guilty plea, to which appellant confirmed that he was. The trial court is permitted to credit appellant's earlier statement of voluntariness over his later assertion that he was pressured. *See White*, *supra*, 863 A.2d at 842. Appellant also argues that the doctrine of judicial estoppel precluded differences in plea offers given to Harris, Thompson, and himself. Judicial estoppel, however, has no bearing on this case. *Hardy v. United States*, 988 A.2d 950, 964 (D.C. 2010) ("The purpose of

(continued…)

## III.  Conclusion

For the above reasons, we conclude that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea.

*Affirmed.*

---

(…continued)

applying this doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing position according to the exigencies of the moment." (citations and internal quotation marks omitted)).  Judicial estoppel does not prevent the government from offering tailored plea deals to co-conspirators based on their different circumstances.  Lastly, appellant asserts that what he really was convicted of was an "implied conspiracy to conceal" Harris's and Thompson's efforts to hide contributions.  This argument lacks merit because the concealment here furthered the main criminal objectives of the conspiracy, i.e., to conceal excess contributions to Mayoral Candidate A's campaign, rather than to cover up an already completed offense.  *See Snowden v. United States*, 52 A.3d 858, 867 (D.C. 2012).